# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TAM V. LE, THIM T. NGUYEN,** | § | |
| **TAI LAM, DUNG VAN NGUYEN,** | § | **CIVIL CASE NO._____** |
| **HUNG VAN PHAM, MINH TAN VO,** | § | |
| **DAVID NGUYEN, L.V. MARINE** | § | |
| **CORPORATION, LADY MORE LLC,** | § | |
| **NATURAL NINE, LLC,** | § | **Judge _____** |
| **QUYET PHAM, NHAT VAN NGUYEN,** | § | |
| **DUY QUOCHA, THERESA T.** | § | |
| **NGUYEN,   THINH T. NGUYEN** | § | |
| **LISA NGUYEN, LEE VAN NGUYEN,** | § | |
| **AND THANH LINH VU NGUYEN,** | § | |
| *individually and on behalf of all others* | § | |
| *similarly situated,* | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **VS.** | § | |
| | § | |
| **MIKAL WATTS, HUNTER CRAFT,** | § | |
| **FRANCISCO GUERRA, AND** | § | |
| **WATTS GUERRA CRAFT LLP** | § | **CLASS ACTION PURSUANT** |
| **Defendants** | § | **TO FED. R. CIV. P. 23** |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs herein are appearing both (1) individually and as representatives of members of a putative class of individuals who suffered Private Economic Losses and Property Damages as a result of the acts and omissions of Defendants; (2) individually and as representatives of thousands of Vietnamese American fishermen (boat owners, captains, and crew members) who are members of the Class Action for Private Economic Losses and Property Damages under the Seafood Program which is under the Jurisdiction of this Court, and who have been and will be severely damaged by Defendants' action, because their payments from the Seafood Settlement Fund, to be distributed in late February or March of 2014, have been requested to be suspended

by BP; or the seafood claimants whose first round of payments have been and will be delayed due to BP filing a lawsuit against Mikal Watts and his Firm;[1] and 3) individually and as representatives of the proposed class(es) of non-members of the Class Action for Private Economic Losses and Property Damages, and whose identities were used by Defendants. These Plaintiffs bring the following claims against Defendants, Mikal Watts, Hunter Craft, Francisco Guerra, Watts Guerra Craft LLP, and their co-conspirators, and respectfully show the Honorable Court the following:

## I. INTRODUCTION

1.      This case involves a well-known and powerful law firm profiting at the expense of the hard-working Gulf Coast fishermen, the majority of whom are Vietnamese-American, as well as business owners whose lives and ability to earn a living were devastated by the Deepwater Horizon disaster.  At its core, this tragedy involves Mr. Mikal Watts (interchangeably "Mr. Watts" or "Watts"), Mr. Hunter Craft ("Mr. Craft"), Mr. Francisco Guerra ("Mr. Guerra"), and their law firm, Watts Guerra Craft LLP ("WG")[2] and their co-conspirators.[3] Mr. Watts and Mr. Guerra are both Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization.[4]

---

[1]      The attorneys' fees paid by this class will be excluded of (or minus) the value of their payments from the DHECC under the seafood program which is between them and their counsel.

[2]      As stated below, in the midst of the ongoing federal investigation regarding his Deepwater Horizon client list, Mr. Watts has since resigned from the PSC (albeit during trial). Shortly after Mr. Watts' resignation from the PSC, Mr. Craft ceased his association with the firm previously known as Watts Guerra Craft (now known as Watts Guerra LLP) (herein after referred to interchangeably as "WGC" or "WG"). WGC no longer exists and became WG.

[3]      Their co-conspirators are the ones who conspired with Watts to hide/suppress the fact that Defendants misused the identities of many Vietnamese and other names.

[4]      As a Texas lawyer, Watts and WG are **always** subject to the Rules of the Texas State Bar and standard of care. The courts will likely find that an attorney who holds himself out as a specialist should be held to the standard of care for a *reasonably prudent expert* in that field. *See e.g. Hill v. Perel*, 923 S.W.2d 636, 638 (Tex. App. – Houston [1st Dist.] 1995, no writ) (in summary judgment affidavit, Plaintiff's expert said attorney's handling of the claim fell below the standard of care required by a board-certified attorney in the area of personal injury trial law); *see also Streber v. Hunter*, 221 F.3d 701, 722 (5th Cir. 2000) (applying Texas law; client's expert witness

2.      Mr. Watts and WG were involved in the misappropriation of identities of many of thousands of Gulf Coast Vietnamese-Americans in order to increase his chances of obtaining a position on the Deepwater Horizon Plaintiffs Steering Committee (the "PSC") for their own financial gain. (*See* Exhibit 1--Sworn and Notarized Application of Mikal C. Watts for Plaintiff's Steering Committee filed on August 27, 2010, at p.1 (Doc. No. 106)).[5] ("I have previously filed multiple civil actions in this litigation [MDL. No. 2179] and currently represent over 40,000 plaintiffs [...] pursuant to the provisions of 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.")

3.      Mr. Mikal Watts and WG filed over 25 complaints with various federal courts and the Judicial Panel on Multi-District Litigation between June 3, 2010, and October 4, 2010, which cases were transferred to MDL 2179 before the Honorable Carl Barbier in the Eastern District of Louisiana. Mikal Watts and WG held out to the Court that they were attorneys who represented tens of thousands of Vietnamese-American "clients." *See e.g.* Complaint by Plaintiffs *Tran Ngoc Dung, et al.,* June 3, 2010, Doc. No. 1-2, *Dung, et al. v. BP Exploration & Prod., Inc. et al.*, No. 2:10-CV-03178 (E.D.La.) (Barbier, J.); *see also* First Amended Complaint by Plaintiffs *Tran Ngoc Dung, et al.*, October 19, 2010 (Doc. No. 563).[6] (*See e.g.* Exhibit 2 attached with tens of

---

sufficiently described standard of care for tax specialist).  An attorney is liable for his own negligence. *See Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). A law firm is liable for the negligence of a partner of the firm. *See Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 760, 763 (Tex. 1976). A law firm is liable to the same extent as a partner who, acting in the ordinary course of business or with the authority of the other partners, engages in any wrongful act or omission and causes loss or injury to any person. *Id.* An attorney is also liable for the negligent acts of a non-lawyer employee as long as the act was committed (1) within the scope of the general authority of the employee, (2) in furtherance of the attorney's business and (3) for the accomplishment of the object for which the person was employed. *Moser v. Davis*, 79 S.W.3d 162, 167 (Tex. App. – Amarillo 2002, no pet.).

[5]      "Doc. No." means the docket entries in MDL 2179.

[6]      As will be discussed later, Mikal Watts and WG could not provide contracts or consents with these "clients" as required by the Texas Bar's Rules of Professional Conduct.

thousands of Vietnamese names. These complaints and short form joinders are also available on the docket report for MDL 2179).

4.    Upon information and belief, Mr. Watts and WG committed these blatant wrongs against Plaintiffs, and the members of the putative class, under the arrogant presumption that this minority group of Vietnamese fishermen[7] would be scared of Defendants power and influence and thus would bow their heads.  Little did they know that the Vietnamese are fighters to their very bones. Since their immigration to the United States after the fall of South Vietnam, the Vietnamese fishermen have successfully sued and fought fearlessly against Ku Klux Klan members,[8] various mafias, corrupt government officials, global corporations and communist

---

[7]    The term "Vietnamese fishermen" means fisher men and fisher women. There are many Vietnamese boat owners, captains, and crew members (deckhands) who are women. Together with their fathers, brothers, husbands, and sons, these women have resiliently undergone trials and tribulations, have worked at high sea and have fought nobly and fearlessly against numerous enemies while taking care of their children.

[8]    *See The Vietnamese Fishermen Association, et al. v., The Knights of the Ku Klux Klan, et al.,*518 F. Supp. 993 (S.D. Tex. 1981). This is a well-known civil rights case filed on April 16, 1981 by an organization of Vietnamese fishermen and individual Vietnamese fishermen led by Colonel Nam Van Nguyen and represented by Attorneys Morris Dees (with the assistance of Attorney David Berg, one of the most reputable lawyers in Houston, Texas and in the United States) against the Knights of the Ku Klux Klan, the Grand Dragon of the Ku Klux Klan in the State of Texas, certain unknown members of the Ku Klux Klan, and others. The Vietnamese fishermen asserted that the Ku Klux Klan Defendants violated the Vietnamese fishermen's rights under several civil rights statutes such as 42 U.S.C. §§ 1981, 1982, 1985(c), and 1986; the Thirteenth and Fourteenth Amendments to the United States Constitution; the Sherman Act, 15 U.S.C. §§ 1, 2, 15, and 26; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962 and 1964; and the common law torts of assault, trespass to personal property, intentional infliction of emotional distress, and intentional interference with contractual relations. The Vietnamese fishermen contended that via the Klu Klux Klan Defendants' illegal acts, the Ku Klux Klan Defendants conspired to deprive the Vietnamese fishermen and their class of equal protection of the laws and of equal privileges and immunities under the laws; and that the defendants acted out of a class-based animus against Vietnamese persons.

The Federal District Court, Judge Gabriel MacDonald, in a 1981 Civil Rights Decision, found that the Ku Klux Klan Defendants violated 42 U.S.C. §§ 1981, 1982, 1985(c), and 1986 and committed the common law torts of intentional infliction of emotional distress and intentional interference with contractual relations. This civil rights class of Vietnamese fishermen instantly won national recognition. For decades, it has been a very important civil rights case for law students and civil rights scholars to study.  On March 15, 2013, in a heartfelt speech delivered to the National Minority Lawyers and Legal Association, Federal Judge Gregg Costa, the youngest Federal District Judge in the United States and one of the most brilliant legal scholars in the country (who has just been appointed by President Barrack Obama on December 17, 2013 to serve on the 5th Circuit Court of Appeals) said that, as to the Civil Rights Movement in the United States, *The Vietnamese Fishermen Association. v. The Knights of the Ku Klux Klan*is as important as *Brown v. Board of Education*.

governments, and many other villains. As Congressman Al Green of Texas said in one of his noted speeches: "*Do not ever mess with the Vietnamese Fishermen*."

5.      According to court filings, as of today, out of 44,510 crew members, Mr. Watts and WG only filed 648 individual crew members' claims with the Deepwater Horizon Economic Claim Center (the "DHECC"). Of these 648 crew claimants, only 8 have been found eligible for payment, with 17 claims still pending. *Mr. Watts failed to file claims for more than 98 percent of the persons whom he claimed to represent, and the deadline for filing claims with the DHECC (January 22, 2013) has passed.* Out of the 648 claims submitted by Mr. Watts, 96 percent of those claims were denied.

6.      As noted above, based on Mr. Watts' representations, on October 8, 2010, United States District Court Judge Carl Barbier appointed Mr. Watts to the Plaintiffs Steering Committee in MDL2179**.** (*See* Exhibit 3, Pretrial Order dated October 8, 2010 (Doc. No. 506) and Pretrial Order 53, dated September 10, 2012(Doc. No. 7350) (reappointment of the members of the PSC)).

7.      Since their appointment on October 8, 2010, Mr. Watts and WG used their fame to obtain many mass tort cases and appointments to other PSCs in other MDLs. For example, in Mr. Watts' and WG's advertisements and solicitation letters related to MDL 2385 *In Re Pradaxa Products Liability Litigation*, Mr. Watts and WG represented in ads that: "*Watts has become famous for his landmark recoveries in vehicle rollover cases and his lead trial team position with the BP Multi-District Litigation (MDL No. 2179)*," (*Emphasis added*). (*See* Exhibit 4 -- WG's advertisement before the February 2013 raid on his office by federal law enforcement officers. It

---

Today, 33 years later, by using the names of tens of thousands of Vietnamese fishermen, Watts and WG and their co-conspirators acted out of a class-based animus against Vietnamese persons. As such, they violated: 42 U.S.C. §§ 1981, 1982, 1985(c), and 1986; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962 and 1964; the common law torts of negligence and/or misappropriation of personal identities, negligent misrepresentation, and state and federal common law breaches of fiduciary duty.

is thus clearly known to the public that Mr. Watts used tens of thousands of Vietnamese names to increase his chance to obtain his famed position; and Mr. Watts and WG admitted that. *Id*.[9]

8.     On April 18, 2011, the *New York Times* published an exposé, titled "Many Hit By Spill Now Caught In Claims Process,"[10] which led to an investigation by the United States Department of Justice and the FBI, and ultimately to raids by the Secret Service of the Defendants' two offices in San Antonio, Texas in February of 2013.[11] On March 13, 2013, United States District Court Judge Carl Barbier ordered that, "The Clerk shall remove Mr. Watts from the list of PSC and the Class Counsel Members." (*See* Exhibit 8, Doc. No. 8894.) Thereafter, all references to the BP oil spill litigation and Watts' PSC appointment on WG's website were taken down. (*See also* Exhibit 5). The Vietnamese fishermen fortunately have saved a copy of WG's old website.

9.     Mr. Watts and WG committed various torts against the Vietnamese fishermen and others, such as misappropriation (or negligent misappropriation) of identity, negligent misrepresentation, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), violation of the Texas Deceptive Trade Practices Act ("DTPA"), and breach of the fiduciary duty that they owed to the entire putative class of claimants insofar as Watts served as a member of the PSC and also had a "lead trial team position with the BP Multi-District Litigation."(*See* Exhibit 4 and 4 A.)

---

[9]     *See also* Exhibit 5 -- Mr. Watts' and WG's current website, which does not contain a single reference to the BP Oil Spill Case, Watts's PSC appointment or Watts' purported representation of tens of thousands of fishermen: http://www.wattsguerra.com).

[10]     *The Times* article states that: "Watts is on the plaintiffs steering committee selected by Judge Barbier. A large list of clients can help secure a seat on the lucrative committee. Mr. Watts declared on his application that he had 41,000 clients, a tally he now puts at 43,000. All of them, he said in an interview, came through referrals from other lawyers." (*See* Exhibit 6.)

[11]     *Houston Chronicle*: "Feds raid the offices of BP plaintiff attorney." ("A nationally recognized plaintiff's lawyer and Democratic Party darling who last year hosted a private fundraiser for President Barrack Obama finds himself under federal investigation over the legitimacy of his client list in case stemming from the deadly 2010 BP Oil Spill"). (*See* Exhibit 7.)

10.     By their actions, Mr. Watts and WG prejudiced the rights of tens of thousands of members of the Gulf Coast Vietnamese-American community, along with other similarly situated individuals. Mr. Watts and WG's wrongdoings shall not stand unopposed.[12]

11.     The actions of Mr. Watts and WG undermine the foundational precepts that to be an attorney is an honor and that the practice of law is a "profession" rather than a "business."  As with any profession, occasional disagreements or misunderstandings with clients are unavoidable. But the actions of Mr. Watts and WG, as set forth in this Complaint, are something else entirely. Mr. Watts and WG filed suits without permission on behalf of tens of thousands of "clients" with whom they did not have a legitimate attorney-client relationship; who had never signed a written contingency fee contract or consent to refer form providing Mr. Watts and WG authority to represent them; and who had never met with them or even heard of them. Defendants made misrepresentations to many federal courts, the JPML, the GCCF, the DHECC, other members of the PSC, the media, the American public and the U.S. government regarding the number of Vietnamese-Americans they actually represented.

12.     This is not the first time Mr. Watts, Mr. Craft and WG have been implicated in this type of action.  A case involving substantially similar allegations has been publicly reported regarding an elderly Hispanic woman named Cayetana Rivas, further emphasizing the pattern and practice of Mr. Watts and WG of preying on society's most vulnerable members. The article documenting the *Rivas* case reported in pertinent part:

> A lawsuit against the company that employed Antonio Rivas was quickly filed by lawyers from the Watts Law Firm on behalf of Rivas' widow, Maria Zuniga, and his aging mother, Cayetana Rivas, who lived across the Rio Grande in a small border village. In August 2003, the case was settled for $1.8 million, but that did

---

[12]     The unequivocal response from the Vietnamese fishermen and their Vietnamese counsel recalls the words of King David, paraphrased: "[Watts and WG] come against [us] with a dagger, spear, and sword, but [we] come against[them] in the name of the Lord . . . [for these defendants] have defied Him." *See* 1 Samuel 17:45 (Exhibit 9).

not end the matter.  Now pending in Hidalgo County is another suit, naming Mikal Watts, Zuniga, and lawyers Hunter Craft and Charles Argento as defendants.  It claims that Cayetana Rivas was deceived and cheated in her son's wrongful death suit. It accuses Argento and the lawyers for the Watts firm of prosecuting the wrongful death case without ever finding Rivas in Mexico, much less signing her up as a client, as required by state bar rules. "They told the court that they knew Cayetana Rivas, that they represented her and that they had her permission to represent her, all of which were false," [Plaintiff's counsel] Robinson said. One of the critical allegations of the suit is that *the plaintiff's lawyers falsely claimed to have been retained by Rivas when they have never met her, and she was thus completely unaware of the litigation*.

After reviewing a copy of the pending suit, Tom Watkins, an Austin lawyer who is chairman of the Texas Supreme Court's task force to rewrite the disciplinary rules for lawyers, said the alleged absence of a contract is always a fatal flaw. "*If the allegations in the petition are true, they should forfeit their whole fee*," he said of the lawyers involved. "*If you don't have a contract to represent someone, you have no authority to file a lawsuit, and all the stuff that later went wrong flows from the fact that they started out wrong*."[13][Emphasis added.]

## II. PARTIES

13.    Made Plaintiffs herein are: Tam V. Le,  Thim T. Nguyen, Tai Lam, Dung Van Nguyen, Hung Van Pham, Minh Tan Vo, and David Nguyen, appearing both individually and on behalf of all others putative class members who suffered a private economic loss and property damage and whose identities were misappropriated by Defendants.

14.    Also made Plaintiffs herein are L.V. Marine Corporation, Natural Nine, LLC, Lady More LLC., Quyet Pham, Nhat Van Nguyen, and Duy Quoc Ha, who appear both individually and on behalf of all similarly situated putative class members who suffered a private economic loss and property damage, and which Plaintiffs sustained damages as a result of their BP payments from the DHECC being delayed due to Mr. Watts' misconduct.

---

[13]      *See* Exhibit 10 -- John MacCormack, *Suit Claim Lawyers Cheated Aging Mom*, Express News, April 12, 2010, a true and correct copy of which is attached hereto; s*ee also* Rule 1.04(f) of the Texas Rules of Professional Conduct.

15.     Also made Plaintiffs herein are Lee Nguyen, Lisa Nguyen, Lien Nguyen, Thanh - Linh Vu Nguyen, Theresa T. Nguyen, and Thinh T. Nguyen who appear both individually and on behalf of putative class members who are non-members of the Class Action for Private Economic Losses and Property Damages.

16.     Made Defendant here is Mr. Mikal Watts ("Watts"), who is a Texas citizen who is duly licensed to practice law in the State of Texas, is Board Certified by the Texas Board of Legal Specialization in Personal Injury Trial Law, and who resides in Bexar County, Texas.  He may be served with process at his principal place of business located at 4 Dominion Drive, Building 3, Suite 100, San Antonio, Texas 78257. This Court has personal jurisdiction over Mr. Watts, because Mr. Watts claimed to represent more than 40,000 putative class members in the Class Action litigation before this Honorable Court, many of whom alleged to be residents of Louisiana.  Mr. Watts otherwise participated in the Class Action litigation before this Court as a member of the Plaintiffs' Steering Committee until his resignation from that committee on March 13, 2013.  Mr. Watts consented to the continuing, ongoing, and exclusive jurisdiction of this Court for any suit arising out of or relating to the Settlement Agreement.  *(See* Ex. 11 -- The Seafood Compensation Program of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement, Sec. 18.1.)

17.     Also made Defendant herein is Mr. Hunter Craft ("Craft"), who is a Texas citizen, duly licensed to practice law in the State of Texas and who resides in Harris County, Texas.  He may be served with process at his principal place of business located at 2402 Dunlavy, Ste. 300, Houston, Texas 77006.

18.     Also made Defendant herein is Mr. Francisco Guerra ("Guerra"), who is a Texas citizen duly licensed to practice law in the State of Texas, is Board Certified by the Texas Board of Legal Specialization in Personal Injury Trial Law, and who resides in Bexar County, Texas.  He

may be served with process at his principal place of business located at 4 Dominion Drive, Building 3, Suite 100, San Antonio, Texas 78257.

19.     Also made Defendant herein is Watts Guerra Craft LLP ("WG"), a Texas limited liability partnership which has continuous and systematic contacts with the Eastern District of Louisiana. At all times relevant to the facts alleged in the Complaint, WG operated a law office in Houston, Harris County, Texas.  WG may be served with process by serving the named Partner Mikal Watts at the firm's primary place of business located at 4 Dominion Drive, Building 3, Suite 100, San Antonio, Texas 78257.  This Court has personal jurisdiction over WG, because the firm and its agents alleged that they represented more than 40,000 claimants in complaints and other documents filed in the Deepwater Horizon litigation pending before this Court, and because the firm, through its agents, consented to the continuing, ongoing, and exclusive jurisdiction of this Court for any suit arising out of or relating to the Settlement Agreement.  (Exhibit 11, Sec. 18.1.)

### III. JURISDICTION AND VENUE

20.     This Complaint arises out of and is related to MDL 2179 *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (the "Class Action"), which is also pending before this Honorable Court, before the Honorable Carl J. Barbier and Magistrate Judge Sally Shushan.

21.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. Sec. 1333 and 28 U.S.C. Sec. 1367 as a related case to the underlying Class Action for Private Economic Losses and Property Damages.  Plaintiffs herein are L.V. Marine Corporation, Natural Nine, LLC, Lady More LLC., Quyet Pham, Nhat Van Nguyen, Thim T. Nguyen, Duy Quoc Ha, Tai Lam, Dung Van Nguyen, Hung Van Pham, Minh Tan Vo, and David Nguyen are members of the Class Action for Private Economic Losses and Property Damages which is under the Jurisdiction of this Court. This action forms part of the same case or controversy as the underlying Class Action,

inasmuch as Watts was a member of the PSC at all relevant times and held a lead trial team position with the PSC, and he and his co-conspirators committed malpractice, negligence, and breached their fiduciary duty owed to members of the class.

22.     In a final judgment in MDL 2179, this Court expressly retained ongoing and exclusive jurisdiction over the Settlement Agreement and the Seafood Fund until the termination of the Court Supervised Settlement Program, an event that has not yet come to pass.  *See* Doc. No. 8139. (*See also* Exhibit 11,Secs. 4.3.2, 5.12.1.2, 18).

23.     This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. Sec. 1332, *et. seq.*, because the amount in controversy for the proposed class(es) is greater than $5,000,000.00 and the putative class includes thousands of individuals.

24.     Venue is proper in this district under 28 U.S.C. Sec. 1391, because many of the Class defendants, Watts' and WG's co-conspirators, reside in this district, and/or because many of the acts and omissions giving rise to this claim occurred in this District.

25.     Venue is also appropriate because this Court has retained continuing and exclusive jurisdiction over suits and actions arising out of or related to the Settlement Agreement.  (*See* Ex. 12, Sec. 18.1).

26.     Venue is proper in this judicial district pursuant to 18 U.S.C. Sec. 1965 and 28 U.S.C. Sec. 1391, because both Mr. Watts and the other Defendants are subject to personal jurisdiction in this judicial district.  Section 1965(b) of RICO further provides that process may be served in "any judicial district of the United States" when required by the "ends of justice."  Courts have held that such "nationwide service of process" provisions also confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimal contacts with the United States.

## IV. FACTUAL BACKGROUND

27.     The Deepwater Horizon Oil Spill disaster is one of the largest mass tort scenarios in United States history. Immediately after the precipitating event, most national mass tort plaintiffs' firms and litigation powerhouses began to accept clients. Besides building a client base, the ultimate goal for many major mass tort lawyers was to obtain the extremely prestigious appointment to the Plaintiffs' Steering Committee ("PSC").

28.     After an extensive application process, during which numerous factors, including number of clients were considered by the Honorable Carl Barbier, only two Texas attorneys were named to the PSC, with Mikal Watts being one of them.[14] A number of very well-known and nationally recognized litigators with strong credentials and reputations for their ability, and, most importantly, with <u>dramatically</u> fewer clients than Mr. Watts claimed he represented, were not appointed to the PSC.[15]

29.     Mr. Watts subsequently filed over 44,510 Short-form Joinders ("SFJs") with the Court. *See* (Doc. No. 3142) ("Approximately 107,000 short-form joinders have been entered on the docket, with the Watts Guerra firm accounting for 44,510 of those filings."). *See also* Civil No. 10-08888, captioned *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" SHORT-FORM JOINDERS. See* Civil No. 10-08888 (Doc. Nos. 676-40856, 40936-42457, 44311-46801, and 47801-52221) (the vast majority of the SFJs filed in these docket ranges were filed by Mikal

---

[14]     As stated above, in the midst of the ongoing federal investigation regarding his Deepwater Horizon client list, Mr. Watts has since resigned from the PSC (albeit during trial). Very shortly after Mr. Watts' resignation from the PSC, Mr. Craft ceased his association with the firm previously known as Watts Guerra Craft (now known as Watts Guerra LLP or ("WG")).

[15]     *See* Exhibit 12 -- "Texas Lawyer Watts Represents 44,510 Clients in BP litigation," *Louisiana Record,* July 19, 2011, stating Watts "represents an *astonishing* total of 44,510 clients preparing for the first trial over the Deepwater Horizon explosion, according to a report U.S. District Judge Barbier received on July 6, 2011. Watts and his firm, Watts Guerra Craft, filed that many short joiner forms in national litigation before Barbier, according to the report. All other lawyers together filed about 62,000 Short-Form Joinders ("SFJ"), according to the report" (emphasis added). (*See id.*)

Watts and WG, however, many of these alleged clients never retained either him or his firm. *See e.g.* Civil No. 10-08888, (Doc. Nos. 676-40856, 40936-42457, 44311-46801, and 47801-52221); *see also* (Exhibit 11 listing 42,722 "Watts' Individual/Crew Fishing SFJs") (*See id*.).

30.     Though Mr. Watts himself is a well-known trial lawyer, his apparent "ace in the hole" was the misrepresentation to Judge Carl Barbier that he represented over forty thousand (40,000) plaintiffs. A review of the client lists Mr. Watts and WG submitted as part of the PSC application process reveals that a large number of these alleged clients appear to be Gulf Coast Vietnamese-Americans --- far more than any other attorney claimed.[16]

A.     **WATTS' AND WG'S TARGETING MAINLY THE VIETNAMESE**

(1) Defendants indeed acted out of a class-based animus against mainly the Vietnamese class members, who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, *but who received the "Dear Client" Letter and whose identities were included in Mr. Watts' PSC application materials*. As an example of this class, see Mr. Tam Le's Affidavit, incorporated into and attached hereto as Exhibit 13.

31.     Moreover, consistent with the aforementioned pattern and conduct of Mr. Watts and the other Defendants toward the Vietnamese community, similar situations with other plaintiff attorneys with significant dockets of Vietnamese Deepwater Horizon clients soon arose, as their own clients received correspondence from Mr. Watts and WG.  These claimants, who were otherwise represented by other attorneys received "Dear Client" letters from Defendants instructing them not to sign documents except those received from Watts and/or WG.[17]  The "Dear Client" letter (which was written in Vietnamese), which was mailed to each of the alleged

---

[16]     *See* Watts' application to serve on the PSC, exhibit 1.

[17]     These letters, sent to persons who were already represented by other counsel, are improper by their very nature.  If a person, (who is an attorney having an intent to obtain professional employment for himself or for another) provides or knowingly permits to be provided, to an individual who has not sought the person's employment, legal representation, advice or care, a written communication or solicitation, including a solicitation in person or by telephone that . . . contains a false, fraudulent, misleading, deceptive or unfair statement or claim, such person violates the laws.

Vietnamese-American clients of Mr. Watts and WG, who were actually already represented by other attorneys, stated:[18]

> WATTS | GUERRA | CRAFT
> BP GULF OIL SPILL LITIGATION
>
> 2506 N. Port Avenue                    June 14, 2010
> Corpus Christi, Texas 78401
> 877-631-4046 or 877-389-2954 PHONE
>
> Tam Le
> 24142 Ferry Landing
> Denham Springs, LA 70726
>
> RE:    BP Deepwater Horizon Oil Spill of Le, Tam (268303)
>
> Dear Tam:
>
> I am very happy that you have chosen our law firm to represent you in the case of economic damages due to the Deepwater Horizon Oil Spill.  This letter is sent to you as our first update of our work progress informing you of what I believe will happen to your lawsuit in the next few months.
>
> First, you must be careful!  BP is offering minimum compensation in exchange for your lawsuit.  **Do Not Sign anything from BP or anyone else besides Watts Guerra Craft.**  We are your attorneys, and we are here to help you with all aspects of your claim.
>
> Second, after you sign this contract with our law firm, sign the tax release form, and fill out our inquiry form, we will then enter your information into our law firm database.  We now have over 15,000 commercial fishermen, shrimpers, and boat owners in this lawsuit; and all their information is being placed in our computer database for backup.  We are in the process of reviewing your file to ensure that we have all the important information needed, including, but not limited to, social security numbers and commercial fishing licenses.   We will contact you in the near future if we need

---

[18]    *See* a copy of this "Dear Client" Letter in Vietnamese, sent to tens of thousands of Vietnamese-American clients of other attorneys, incorporated into and attached hereto as Exhibit 14.

additional information regarding your claim.  It is very important for you to provide this information for your claim.

Third, if you live in Texas, your lawsuit has been filed in the State of Texas against BP, Transocean, and Cameron.  And if you live elsewhere, your lawsuit has been filed in the federal court against the three defendants, as well as against Halliburton.  A copy of your file is on our website, and can be accessed at http://masstort.wgelawfirm.com/ just by clicking on "Documents" on the upper left corner under the name BP, then click on your case number 4:10-cv-01968.

Fourth, we already submitted a copy of your file to the attorney that is representing BP.  This month, we expect to have more discussions with them regarding the upcoming process.  We intend to engage early with BP and the other defendants.

Fifth, as cases have been filed by many different lawyers in different jurisdictions; a motion to consolidate this lawsuit in a MDL (Multi-District Litigation) has been filed.  The consolidation is scheduled to meet on July 29 in Boise, Idaho with the Multi-District Litigation Panel.  I expect the consolidation will be arranged, and most of the lawsuits filed in the federal court will be centralized before one federal judge.  Once we know where and what court, we will engage quickly in the litigation procedures of that court, in order to gain a leading central role in this litigation process thereafter.

Sixth, I have served on the Plaintiffs' Steering Committee (PSC) for previous cases, and I will apply this leading role toward this case.  The plaintiffs' litigation team will set up in September or October, then we will proceed with the lawsuit and prepare for trial.

Seventh, as I understand the devastation of this disaster will impact thousands of lives, we intend to engage in all the settlement discussions with BP and other defendants as soon as we can. We will inform you, but you are the one who will determine the settlement.

I am looking forward to providing you with the updated information periodically, and I will write more information about the plaintiffs' litigation organization once it is completed.  If you have any question, please call one of our toll-free numbers: 877-631-4046 or 877-389-2954.  We are actively working on your case until we can provide you a written report of the updated information in a few months.

Thank you for your attention,

Mikal C. Watts

32.     (*See* Exhibit 14.) Mr. Tam Le, one of the proposed class representatives, never met Mr. Watts or any person or representative from Mr. Watts' firm.  Mr. Le never signed a contract with Mr. Watts and thus certainly did not "changed his mind" as Mr. Watts has suggested. (*See* Mr. Tam Le's Affidavit as Exhibit 13.) Mr. Le is willing to provide a handwriting sample to be compared by a court-appointed handwriting analysis expert against whatever purported retainer agreement and purported consent that Mr. Watts and WG allegedly have in their possession. The same applies for all of the putative class representatives.  (*Id*.)

33.     Furthermore, the fact that Mr. Watts and WG never represented Mr. Le, as Mr. Watts claimed, can be demonstrated by other methods. Mr. Le is neither a deckhand nor a boat owner, but instead is a very reputable businessman in the Vietnamese community.(*Id*.)

34.     Specifically, Mr. Le's corporation-- LV Marine Corp. (EIN: 72-1445573) has owned a boat for 15 years. (*Id*.) The vessel registration number is 1083041. (*Id*.)  Mr. Le's license number is LA002614425. He resides at 24142 Ferry Harrells Landing, Denham Springs, LA 70726. (*Id*.) Had Mr. Watts or the other Defendants truly represented Mr. Le as they claimed, they would have listed LV Marine, Corp. as a plaintiff, because it is L.V. Marine, Corp. that owns the boat, not Mr. Le. (*Id*.) Thus the lawsuit or claim filed with the GCCF or the DHECC must list his corporation as the proper party plaintiff. (*Id*.) This raises the very reasonable inference that Mr.

Watts and the other Defendants, in fact, knew nothing about this claimant (other than his name obtained from a directory).  Further, this glaring omission, by such experienced lawyers as Mr. Watts and the other Defendants, demonstrates they never met with Mr. Le; never reviewed the specifics of his case; or had any fee contract or consent signed by an authorized representative of L.V. Marine, Corp. when they sent Mr. Lethe "Dear Client" correspondence and improperly filed a complaint under his name.  (*Id.*)

35.    Most importantly, it is apparent from the text of the letter that no contract and/or a consent form had been filed on behalf on Mr. Tam Le by Watts and WG.  (*Id.*) Mr. Tam Le's fishing boat corporation has obtained its first round of payment from the Seafood Fund. The fishing boat corporation now has suffered harm; because BP now claims, based on  the misconduct of Watts (as a former member of the PSC) and WG, that it was misled and thus the second round of BP payment must be halted. The end result is BP settlement payment to Mr. Le's boat has been delayed. (*Id.*)

  (2). Furthermore, Defendants acted out of a class-based animus against Vietnamese persons using the identities of the Vietnamese class members who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but in whose names a pleading and/or a short-form joinder was filed before the federal courts, the JPML, and Judge Barbier by Mr. Watts and WG. For example, see Ms. T. Thi Nguyen's Affidavit incorporated into and attached hereto as Exhibit 15**.**

36.    Ms. Thim T. Nguyen a/k/a Thim Thi Nguyen ("Ms. Nguyen"), one of the proposed class representatives, is the only Thim T. Nguyen in Baton Rouge, Louisiana. She also is a very well-known person in the Vietnamese-American Fishing Community in Louisiana. She never met Mr. Watts or any person or representative from Mr. Watts' firm. (*See* Ms. T. Thi Nguyen's Affidavit as Exhibit 15). Ms. Nguyen never signed a contract with Mr. Watts and thus did not later "chang[e] her mind" as Mr. Watts has represented. (*Id.*)

37.     Furthermore, the fact that Mr. Watts and WG never represented Ms. Nguyen as Mr. Watts claimed, can be demonstrated by other methods. Ms. Nguyen's corporation owns the boat, she does not, and thus the corporation is the proper party plaintiff.(*Id*.)

38.     Ms. Nguyen is the owner of two corporations: Lady More, LLC (EIN: 74-3147922) and Natural Nine, LLC (EIN: 83-0465766).  (*Id*.) Her corporation Lady More, LLC has owned a boat for 7 years, and the vessel registration number is 1106231. (*Id*.) Her second corporation Natural Nine, LLC has owned a boat for 6 years, and the vessel registration number is 1042536. Ms. Nguyen's driver's license number is LA007012352. (*Id*.) She resides at 9645 El Cajon Dr., Baton Rouge, LA 70815.. (*Id*.) Had Mr. Watts or the other Defendants truly represented Ms. Nguyen as they claimed, they would have listed Lady More, LLC as the proper party plaintiff. (*Id*.) Thus the lawsuit or claim filed with the GCCF or the DHECC must also list her corporation as the claimant. (*Id*.) Obviously, Mr. Watts and the other Defendants, in fact, knew nothing about this claimant (other than her name obtained from a directory in Baton Rouge).  Further, this glaring omission, demonstrates that Defendants never met with Ms. Nguyen; never reviewed the specifics of her claim, or had any fee contract or consent signed by Lady More, LLC at the time they sent Ms. Nguyen the "Dear Client" correspondence and filed a complaint under her name. (*Id*.)

39.     Most importantly, it is apparent from the text of the letter that no contract and/or a consent form had been signed, but a claim had nevertheless been filed on behalf of Ms. Nguyen by Watts and WG.  (*Id*.)

> (3). Furthermore, Defendants acted out of a class-based animus against the Vietnamese class members who did not sign a written contingent fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but in whose name Mr. Watts and WG presented claims to either BP, the GCCF, the DHECC, or BP Claim Program. For example, see Dung Nguyen's Affidavit incorporated into and attached hereto as Exhibit 16.

40.     In addition to the "Dear Client" Letters, Mr. Watts and WG also presented claims to the GCCFC or DHECC for the "clients" they do not represent.

•      Dung Van Nguyen a/k/a Dung Nguyen is a boat owner and a captain for 17 years. His boat registration number is 1023472. His driver's license number is TX00117363. He resides at 4185 Country Club, Dr., Dickinson, TX 77539. Dung Nguyen already retained a lawyer representing him both before the Court and the GCCF. On September 6, 2011, Plaintiff Dung Nguyen learned that Mr. Watts filed a claim via mail or wire with the GCCF for this Plaintiff whom Mr. Watts and WGC did not represent.  When challenged to produce the fee agreements, these Defendants "released" Dung Nguyen, claiming that the filing was done so erroneously. (*See* Dung Nguyen's Affidavit as Exhibit 16.) The letters sent to the GCCF and Dung Nguyen are as follows:

> September 6, 2011
> VIA FAX TO 631-940-6541
> Gulf Coast Claims Facility
> P.O. Box 9658
> Dublin, OH 43017-4958
>
> RE: BP Deepwater Horizon Oil Spill Litigation Claim for Nguyen, Dung
> Our File Number: 255049
> GCCF Claimant ID No.
>
> Dear Administrator,
>
> We are in the process of having this case dismissed. Please proceed with the claimant's wishes.
>
> Please do not hesitate to contact us at 1-800-301-2823 with any questions or concerns.
>
> Sincerely,
>
> Wynter Lee
> Mass Tort Coordinator

September 6, 2011
*Via Certified Mail - Return Receipt Requested*
Dung Nguyen
4185 Country Club Dr.
Dickinson, TX 77539

RE: Dismissal of Erroneously File BP Claim for Nguyen, Dung
Our file No. 255049

Dear Dung:

We are dismissing the BP claim erroneously filed on your behalf. *Occasionally, mistakes are made*, but please understand that we will work diligently to rectify the situation. We will begin the process to dismiss your case immediately.  If your lawsuits currently pending transfer to the BP MDL, we will dismiss as soon as such transfer is finalized.

Again, we apologize for any trouble this may have caused you, and we will work swiftly to dismiss your case. As soon we receive a signed order of dismissal, we will forward it to you. If you have any questions, please feel free to contact me at 1-800-301-2823. [Emphasis added.]

Sincerely,

Mikal C. Watts
Attorney at Law[19]

41.     (*See id.* as Exhibits 16 and the correspondences among the GCCF, Mr. Watts' firm and

Mr. Dung Nguyen as Exhibits 17 and 18.) (Emphasis added.)

(4). Furthermore, Defendants acted out of a class-based animus against Vietnamese persons, who are already class members and who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but who received a substantially similar version of the "Dear Client" letter as set forth herein. For example, see letter of Minh Tan Vo incorporated into and attached hereto as Exhibit 19.

42.     Plaintiffs Tam V. Le, Thim T. Nguyen, Dung Van Nguyen, Hung Van Pham, Tai Lam,

Minh Tan Vo, Quyet Pham and David Nguyen never signed any written contingency fee

agreement and/or any written consent to refer agreement authorizing Mr. Watts and WG to file

---

[19]As stated above, the continuous misconduct of Mr. Watts tolled the statute of limitations.

suit or submit claims on their behalf. But they also received a substantially similar version of the

"Dear Client" letter as set forth in the attached letter sent to Minh Tan Vo incorporated hereto

and attached hereto as Exhibit 19).

(5). Furthermore, Defendants also acted out of a class-based animus against Vietnamese individuals who did not sign a written contingent fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but who received the DHECC's submission forms requesting that these non-clients fill out the DHECC forms, sign, and attach social security cards, driver's licenses, and send back to Mr. Watts and WG in order to receive monetary compensation. For example, see several Letters regarding the DHECC Forms and the Opt-out Letter sent by Watts and WG to induce individuals who were not even fishermen incorporated into and attached hereto as Exhibits 20, 21, and 22.

1) **Mr. Watts instructed Non Clients who are not fishermen to fill out the DHECC Registration Forms, stating: "You must act NOW in order to receive compensation for damages you have suffered":**

WATTS | GUERRA | CRAFT
BP GULF OIL SPILL LITIGATION
bpoilspill@wgclawfirm.com

5250 Prue Road, Suite 525            July 30, 2012
San Antonio, Texas 78240
866.529.9100 PHONE
210.448.0501 FAX
www.wgclawfirm.com



RE:     BP Deepwater Horizon Oil Spill Litigation for ███████
         Our File No.: 267161

Dear ███

British Petroleum (BP) has offered to settle your claim as well as others arising from the explosion of the Deepwater Horizon exploration platform on April 20, 2010 and the consequent oil spill

that spread throughout the Gulf of Mexico.  Preliminary approval of a settlement order and program for those affected by the spill has been given and is now in place.  In order to move forward with processing your claim through the Settlement Program and receiving compensation for damages you have suffered, there are several specific steps that must be followed.

The very first step in the settlement process is the completion of the Registration Form that you will find attached to this letter.  (Please note that we have only included the pages that actually have sections you need to complete.)   The purpose of the Registration Form is to indicate whether you agree to the settlement process or desire to opt-out of the settlement process.  Without completing **ALL** of the information in this form, we cannot file a claim on your behalf, you will not be able to seek any damages for your losses now or in the future due to the BP Oil Spill, and you run the risk of never receiving payment for your losses.

**Please complete, sign, and return or our office by August 17, 2012 the attached Registration Form.**  We cannot register your claim without the completed form, which means that the subsequent claim forms required for participation in the settlement program cannot be submitted either.   Please complete the following steps to ensure proper completion of your Registration Form:

1.  Complete the entire form.  If you have ANY questions while you are completing this form, please do not hesitate to call our office toll free at 866.529.9100.  Someone will be available to answer your questions.

2.  Section: 1.  Preliminary Information
    a.  Question 1:  Leave blank as we will be processing your claim
    b.  Question 2:  provide GCCF Claimant Number if you have filed a claim; otherwise, leave blank.
    c.  Question 3:  Leave blank unless you want to Opt-Out of the Settlement Process.  We recommend that you "DO NOT" opt-out

3.  Section 2.   Claimant Information – A. Individual Claimant Information
    a.  Questions 1, 3, 4, and 5-8:  We must have all of your accurate contact information.  If we need to contact you throughout this claims process, we must be able to reach

22

you in a timely manner.  Please make sure to provide the best way to contact you at any time by including your current address, phone number and email, if applicable.  Also, if there are any changes to your contact information throughout the claims process, please contact our office **IMMEDIATELY.**  If we are unable to reach you, we may not be able to complete the processing of your claim.  Additionally, please provide date of birth and any other name(s) that you use or are known by.

b.  Question 2:  in order to file this Registration Form, we **MUST** have your Social Security Number or Individual Taxpayer Identification Number.  Without one of these, we will not be able to file a claim on your behalf and hence you may not be able to ever receive compensation for your losses.  Be sure to provide the **ENTIRE** number, not just the last four digits.  We cannot and will not process this form without the full nine-digit number.

c.  Questions 9 and 10:  You MUST answer honestly and fully.  If you are married, we **MUST** have the information requested.  Your spouse will become a part of the claims process down the road, and if we do not have this information, it may delay or put a stop to your claim being processed.

4.  Sections 3-8 (not included in the attached).  Will be filled out by our law firm as it pertains to Law Firm information, lawsuit information, claims information, etc.

5.  Section 9 (not included in the attached).   Required Documentation

   a.  **YOU MUST INCLUDE COPIES OF TWO OF THE FOLLOWING:  DRIVERS LICENSE, GOVERNMENT ISSUED ID CARD, SOCIAL SECURITY CARD, PASSPORT, WORKER'S VISA, RESIDENT ALIEN CARD OR A CERTIFIED COPY OF YOUR BIRTH CERTIFICATE.  <u>Without  two forms of identification, we cannot move forward with processing your claim.</u>**

6.   Section 10 and 11.  Signature- You **must** sign and date this Registration Form.  Please also legibly print your name.

Once you have completed and signed the Registration Form, returning it to our office promptly is of the utmost importance.  As

previously mentioned, the registration process is the first of many steps to be completed during the claims process, and the claims process cannot begin until the completed and signed Registration Form is returned to us.  Even though we have until November 1, 2012 to complete the claims process, we need the Registration Form by August 17th to ensure timely submission of your complete claim.  If the claims process is not completed, it is very likely that you will not be able to receive compensation for any of your losses due to the BP Oil Spill Disaster.  Please note that once we receive the completed Registration Form, we will send you a detailed claim packet regarding the next steps in the claims process.
**Please return your completed and signed Registration Form as well as copies of two forms of identification by August 17, 2012 to our office:**

> **Watts Guerra Craft**
> **5250 Prue Road, Suite 525**
> **San Antonio, TX 78240**

Thank you for your cooperation and patience as we work to settle your claim.  If you have any questions, please do not hesitate to contact our office toll free at 866.529.9100.  we look forward to continuing to work diligently on your behalf throughout this process.
Best regards,

Mikal Watts

2) **Mr. Watts sent out Opt Out Letter to non-clients who are not fishermen:**

WATTS | GUERRA | CRAFT
BP GULF OIL SPILL LITIGATION
bpoilspill@wgclawfirm.com

5250 Prue Road, Suite 525                              November 1, 2012
San Antonio, Texas 78240
866.529.9100 PHONE
210.448.0501 FAX
www.wgclawfirm.com

██████████████

RE:   BP Deepwater Horizon Oil Spill Litigation for Po Nghiem
       Our File Number:  397533

████████████

| |
|---|
| **British Petroleum ("BP") has offered to settle your claim. You must act NOW in order to receive compensation for damages you have suffered. Deadlines are approaching** |

Dear ██

This letter is to inform you that previous correspondence mailed on October 15th 2012 detailed instructions regarding Opting-Out of the BP Deepwater Horizon Settlement Program.  As we have not yet received your Registration Form, or any correspondence indicating that you would like to Opt-Out of the Deepwater Horizon settlement Program, we are now assuming that you are choosing to Opt-In to the settlement, the Opt Out deadline has now passed.

In order to move forward with your case and Registration in the Deepwater Horizon Settlement Program, we MUST have a completed Registration Form by **November 14, 2012.** Please note that the Registration Form is only the first step in the settlement claim process.   We must submit your completed Registration Form, Claim Form (to be sent after return of the Registration Form), and supporting documentation thirty (30) days after the Fairness Hearing for the Final Approval of the Settlement Program, or roughly December 8, 2012; however, even though we have until December 8, 2012 to complete the claims process, we need the Registration Form by November 14th to ensure timely submission of your COMPLETE claim.  Please note that once we receive the completed Registration Form, we will send you a detailed claim packet regarding the next steps in the claim process.

Without a completed Registration Packet and supporting documentation, we will not be able to move forward with processing your claim.  If we are unable to file a Registration form on your behalf on or before **November 14, 2012** there is a possibility you may not be able to collect any compensation for you losses arising out of the Deepwater Horizon disaster.

Please return your completed Registration Form to our office immediately.

Thank you for your cooperation and patience as we work to settle your claim.  If you have any questions, please do not hesitate to contact our office toll free at 800.301.2823.  We look forward to continuing to work diligently on your behalf throughout this process.

Best regards,

3)  **Mr. Watts sent hundreds of thousands of letters instructing Non Clients to fill out the DHECC Forms. For example, he sent DHCC's Forms to Non-Clients as shown below. This person was not a fisherman and moved out of Texas years ago.**

WATTS | GUERRA | CRAFT
BP GULF OIL SPILL LITIGATION
bpoilspill@wgclawfirm.com

5250 Prue Road, Suite 525                    December 28, 2012
San Antonio, Texas 78240
866.529.9100 PHONE
210.448.0501 FAX
www.wgclawfirm.com



RE:     BP Deepwater Horizon Oil Spill Litigation for ███████
███  ██████████████



| |
|---|
| **British Petroleum ("BP") has offered to settle your claim.** |
| **You must act NOW in order to receive compensation for** |
| **damages you have suffered.** |
| **Deadlines are approaching** |

Dear ██████████

As you are aware, BP has offered to settle your claim as well as others arising from the explosion of the Deepwater Horizon exploration platform on April 20, 2010 and the consequent oil spill that spread throughout the Gulf of Mexico.   In correspondence

dated July 30, 2012, we outlined several steps that you needed to complete by August 17, 2012 in order to move forward with the processing of your BP settlement claim.  Over the last five months we have mailed four letters regarding deadlines, as well as two copies of the Registration Form Letter.  We have called and left messages regarding deadlines for Claims filing weekly since October.  **Final deadlines are here.**  To date, we have not received your completed Registration Form or Claim and supporting documentation.  In addition to the settlement claim process, you must make "Presentment" under the Oil Pollution Act for your Short Form Joinder, lawsuit or other claim to be valid.  At this point, you are not eligible for the BP settlement.

In addition to the deadlines we've given to you regarding your settlement claim, you **must** make "Presentment" by **January 18, 2013.**  BP will likely take the position that the Statute of Limitations will run on April 20, 2013 and it can take up to 90 days for the claim to be presented before the statute runs.  Presentment generally requires:  (i) a demand for a "sum certain" (total dollar amount claimed), with (ii) a written description of the claim, and (iii) supporting documentation of the losses.  If you submit a settlement claim to the Court-Supervised Settlement Program, you do not have to make separate presentment of such claims.  You should likely, however, out of an abundance of caution, make separate presentment of any Expressly Reserved Claims.  **January 18, 2013 is a FINAL DEADLINE- no extensions will be given if you do not satisfy the requirements of presentment or file a claim by this time.  We may not be able to recover anything on behalf of your claim if these requirements are not satisfied.  (Please see the attached letter from the Plaintiff Steering Committee regarding Presentment.)**  To be clear, at this time, we cannot submit a settlement claim or make Presentment on your behalf.  This means that you will NOT be entitled to receive any monetary compensation now or in the future from BP in regards to damages from your losses arising from the explosion of the Deepwater Horizon exploration platform on April 20, 2010 and the consequent oil spill that spread throughout the Gulf of Mexico.

**It is imperative that you return the completed and signed Registration and Claim Forms AND all supporting documentation to our office before January 18, 2013.  See the previous letters for the Registration Form and details on the**

**necessary documentation.  You have two weeks to provide this information so that we can move forward with Presentment and Claims filing on your behalf.   You may return your documentation to our offices via mail to 5250 Prue Road Suite 525 San Antonio, TX 78240; email at bpoilspilll@wgc.com or fax at 210-448-0501**

Thank you for your cooperation and patience as we work to settle your claim.  If you have any questions, please do not hesitate to contact our office toll free at 800.301.2823.  We look forward to continuing to work diligently on your behalf throughout this process.

Best regards,

Mikal Watts

## B.   THE REACTION OF THE VIETNAMESE FISHING COMMUNITY AND MR. WATTS' DELAY TACTICS

43.    The Gulf Coast Vietnamese Community and the Churches were shocked to learn of Mr. Watts' action. (*See Affidavit* of Rev. Joseph HD Vu, President of *Domus Dei Clerical Society of Apostolic Life* of the United States who is also Chaplain in the United States Air Force and Sworn Statement of Pastor Sharon Gartment incorporated into and attached hereto as Exhibit 23 and 23 B.)  Communications were directed to Mr. Watts about this issue, yet, Mr. Watts insisted that Tam Le, Theresa T. Nguyen, Lien Nguyen, Dung Van Nguyen, and many other Vietnamese claimants were his and his firm's clients and that they had signed retainer agreements, yet later had a change of heart. Upon such representations, Mr. Watts was requested to provide the retainer agreements signed by those specific clients to whom Watts had sent the contested "Dear Client" letters.[20] Mr. Watts gave assurances that he would provide the claimants with copies of these signed retainers, but he has failed to do so.

---

[20]    The inquiry was for the purpose of utilizing a handwriting expert to determine whether the signatures on Watts' alleged contracts were genuine, because the clients claimed not to have signed any contract with him or even to have ever heard of him.

44.    Upon information and belief, Mr. Watts continued making assurances that (1) he and WG had every single signed retainer agreement and consent to refer agreement for each of the clients whom he listed or to whom he sent a letter; (2) that it was, in fact, the clients who are now reneging on the contracts and signing different retainer fee agreements with different lawyers.*(Id.*); and (3) that lack of communication was the reason for the confusion. Concerned for what may be occurring to unsuspecting members of their community, some Vietnamese community members offered to help mend the alleged communication problem between Mr. Watts and WG and their alleged Vietnamese clients. Mr. Watts then claimed that he was a victim of the pro-BP media and newspapers, because BP paid the major newspapers, and that the major newspapers were bought because so much money in advertising was paid. However, the uncontested fact is that Defendants have never produced a signed retainer agreement or a consent to refer agreement related to any of the class representatives or any members of the putative class.

45.    Mr. Watts also continuously represented that he relied almost exclusively on referring lawyers to obtain his purported Vietnamese client. Mr. Watts represented to many people, that his referral attorneys had represented to him that they had written, signed contingent fee contracts and written consents for all of the challenged Vietnamese claimants.[21] But when requested to present the challenged clients' written consents, authorizing the unidentified referring attorneys to share fees with Mr. Watts and WG, as required by the Rules of Professional Conduct: Rule 1.04 (f) (2) (Texas);Rule 1.05 (e) (Louisiana), Rule 1.05(e)

---

[21]    Under Rule 1.04(f) (2) of the Texas Rules of Professional Conduct, as Texas lawyers, Watts and his Firm WG are obligated to have and review written consents signed by the clients to authorize them and the referral lawyers to share the responsibility and share fees.

(Mississippi); Rule 1.05(e) (Alabama); Rule 4-1.5(f)(2) (Florida);and Rule 1.05 (e) (Georgia), Mr. Watts has failed to produce a single written consent.[22]

46.     As the investigation by the Department of Justice and the raid by the Secret Service Agents developed, it became clear to members of the Vietnamese community that their identities were misappropriated by Defendants (particularly tens of thousands of Vietnamese fishermen). It also became clear that Mr. Watts made such misrepresentations mentioned in Paragraphs 45 and 46, above, in an effort to lull the Vietnamese plaintiffs.[23]As such, Mr. Watts' and WG's continuous misrepresentations interrupted or suspended prescription.

47.     Mr. Watts misrepresented in his attached PSC application and the attached pleadings that he and WG represented over 40,000 Plaintiffs, including tens of thousands of Vietnamese-Americans. However, upon information and belief, Mr. Watts and WG employed no Vietnamese

---

[22]     Texas Rule 1.04(f)(1)(2) of the Texas Rules of Professional Conduct (are similar to Rule 1.05 (e) (Louisiana), Rule 1.05(e) (Mississippi); Rule 1.05(e) (Alabama); Rule 4-1.5(f)(2) (Florida); Rule 1.05 (e) (Georgia); and Rule 1.05 (e) (South Carolina)) requires:

A division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if:
    (1) the division is:

        (i) in proportion to the professional services performed by each lawyer; or

        (ii) made between lawyers who assume joint responsibility for the representation; and

    (2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including

        (i) the identity of all lawyers or law firms who will participate in the fee-sharing arrangement, and

         (ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and

        (iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and

    (3) the aggregate fee does not violate Paragraph (a) (emphasis added).

[23]     *See* for representative example a true and correct copy of Watts' Letter is incorporated into and attached hereto as Exhibit 24.

lawyers during the relevant time frame.   They employed only *one part-time* Vietnamese-speaking worker (who is a student at Trinity University and whose parents are living in Houston) to allegedly service tens of thousands of Vietnamese clients, the majority for whom English is a second language.   The Department of Justice's investigation appears to be focused on the existence or non-existence of client retainer agreements (and other discrepancies) related to this background.[24] On December 17, 2013, BP filed a lawsuit, alleging that it was misled.

**C.    BP WAS NOT MISLED AND THUS COULD NOT HAVE REASONABLY RELIED ON THE "WATTS INDIVIDUAL/CREW FISHING SFJS" AS A FACTOR TO DETERMINE THE SETTLEMENT AMOUNT FOR THE SEAFOOD FUND**

48.    As indicated above, before settlement negotiations ever began between BP's lawyers and class counsel, on April 18, 2011, *The New York Times* published an article revealing the discrepancies regarding Mr. Watts' alleged Vietnamese client base. A true and correct copy of this article is attached above as Exhibit 6.   The *Times* article reported that: "People familiar with the claims process said almost every submission was listed as a deckhand with identical earnings. The fund [GCCF] demanded further documentation."[25]Apparently what the GCCF's administrator/BP had repeatedly sought, but which Mr. Watts and WG repeatedly refused and could not provide, were retainer agreements (a/k/a attorney engagement letters and/or consents signed by each client for whom Mr. Watts and WG had submitted a claim to the GCCF).

49.    As Mr. Watts and WG began sending tens of thousands of Plaintiff Profile Forms on behalf of their alleged crew members to the GCCF, its lawyer sent out letters to BP's lawyers, reporting that only two claimants listed Watts and WG as their lawyers.

---

[24]    *See* a copy of an AP article documented in the *Houston Chronicle's* March 14, 2013 online issue, incorporated into and attached hereto as Exhibit 25.

[25]    *See* Exhibit 6 --The *Times* article**.**

50.     Specifically, in one instance, on April 26, 2011, via regular U.S. mail and email,

Goodwin Proctor, GCCF's attorney, sent notice to all defense and plaintiff counsel, including

BP's counsel, that stated:

Dear Counsel:

> As you know, we represent Kenneth R. Feinberg in his capacity as Administrator of the
> Gulf Coast Claim Facility (the "GCCF"). . . . This letter is to advise you that the GCCF is
> today making available additional documents in accordance with additional PPFs
> [Plaintiff Profile Forms] it has received.

*****

> With respect to the 40,002 PPFs provided by the law firm of Watts Guerra Craft LLP
> (Watts Guerra), the GCCF is making available for review today documents relating to
> only *one claimant* who submitted two claims. *Within the universe of 40,002 PPFs
> provided by Watts Guerra, 297 were duplicates or otherwise overlapped. Of the 39,705
> non-duplicate names*, the GCCF has no knowledge at all with respect to claims or
> potential claims by 12,834. With respect to the remaining 26,871 non-duplicate names,
> Watts Guerra conducted an electronic date transfer to the GCCF of information
> required by the GCCF claim forms for 25,494, along for some supporting documentation
> for 203 of these potential claims; however, Watts Guerra did not complete the claims
> submission process with respect to any of the 25,494 potential claims, and thus they
> never been submitted to the GCCF for processing. The remaining 1,377 non duplicate
> names match claims that have been filed with the GFECC that either are being processed
> or have been processed; however, only two of these 1,377 claimants listed Watts Guerra
> as their attorneys on their claim forms, and *only one signed the claim forms*. It is with
> respect to this lone claimant that documents are being made available today. With respect
> to the other 1,375 names, 287 listed an attorney or firm other than Watts Guerra on the
> claim form, and the GCCF accordingly cannot follow instructions from Watts Guerra to
> release their information. With respect to the remaining 1,088, *Watts and Guerra
> indicated that it would provide the GCCF with attorney engagement letters signed by the
> claimants evidencing the firm's representations but none of the engagement letters
> provided to date by Watts Guerra to the GCCF relate to the claimants and include a
> valid client signature.*

.

51.     (*See* Letter of Mr. David B. Pitofsky of Goodwin Proctor, attorneys of Mr. Kenneth

Feinberg, sent to all defense and plaintiff counsel, including BP's counsel, incorporated into and

attached hereto as Exhibit 26). (Emphasis added). On April 26, 2011, the evidence was so clear

to BP that: out of 40,002 Plaintiff Profile Forms submitted by Watts and WG to the

GCCF;12,834 were invalid; 25,494 claim forms with names  transferred to the GCCF were also

*invalid*, because "*Watts Guerra did not complete the claims submission process with respect to any of the 25,494 potential claims, . . . they never been submitted to the GCCF for processing.*" (*Id.*) (Emphasis added.). As to the remaining 1,377 alleged clients, 287 were clients of other firms; and *as to the remaining 1,088 names, Watts and WG "had no engagement letters.*"(*Id.*) Two claimants listed Watts and WG as their attorneys on the claim forms, but only **ONE** signed the claim form. (*Id.*) This revelation should have put BP on notice that Defendants' representations were not possibly true concerning the number of claimants they purported to represent.

52.    BP knew or should have known that Watts and WG's claim they represented "42,722 Watts' Individual/Crew Fishing SFJs" were invalid. Yet it now alleges that it reasonably relied on the number of "42,722 Watts' Individual/Crew Fishing SFJs" as a critical factor in determining the overall compensation amount for the Seafood Fund. It also contends that had it known at that time that this number was fictitious, it would not have agreed to pay $2.3 billion into the Fund. This could not be true considering the GCCF's lawyers' correspondence to BP's lawyers and all counsel of the records clearly refuted this alleged reasonable reliance alleged by BP.

53.    Therefore, one can logically conclude that BP already knew that Mr. Watts' claim that he represented over 40,000 deckhands was false. However, BP either: 1) strategically wanted to set a trap for Watts, WG, and their co-conspirators so that it could later get out of its contractual obligation; 2) chose to look away and proceeded with the settlement negotiation due to the insurmountable pressures from all directions that it had to endure during that time; or 3) negligently failed to request Watts to produce over 44,000 fee retainers and consents.

54.    BP could have, at any time, requested Mr. Watts to produce the fee retainers and/or written consents of 42,722 Watts' Individual/Crew members before it accepted this number as a

33

"factor" to determine the compensation amount for the Seafood Fund, before it agreed to include this "factor" in the Settlement Agreement.

55.     BP, via its lawyers, knew or should have known that in the event that every single case at issue was "referred" to Watts and WG, these defendants had an ethical obligation in a contingent fee case under virtually all state bar rules, to have in their possession *a written consent* signed by such client.

56.     Additionally, as mentioned above and as reported in the *Times* article, there were significant discrepancies involving Vietnamese individuals whom Mr. Watts claimed to represent, but who denied they were represented (or had ever been represented) by him or his Firm WG.[26] Thus, it is unjustifiable for BP today to say that in entering into the Settlement Agreement, it truly relied on Watts' number of "clients" as a factor, when BP's lawyers and the GCCF had been questioning the validity of such a number all along.

---

[26]     (*See* Exibit 6). As noted in the Introduction regarding the *Rivas* (filing suit without a contract) matter, Mr. Watts is no stranger to controversy. A brief sample of documented past incidents where the behavior and client generating tactics have appeared to be at odds with the behavior expected of a reasonably prudent attorney include:

- Failing to disclose for five months that his "client, a quadriplegic after an accident, died during settlement talks" with Ford, according to the *Caller-Times*.  A federal judge (U.S. Dist. Ct. in West Virginia) censured Mr. Watts for the 2005 incident, but allowed Mr. Watts to stay on the case over the objection of Ford (*see* Exhibit 27);

- Sending a letter to opposing counsel in a suit in which he detailed his political contributions to the justices sitting on the Appellate Court in Corpus Christi. The letter raised questions over whether he was using his political contributions and influence as leverage in ongoing litigation (*see* Exhibit 28);

- Documented ties to convicted attorney impersonator and case runner Mauricio Celis (CGT Law Group) via receiving case referrals from him as documented in the criminal case (*see* Exhibit 29);

- Implication in a case where Ford claimed a jury in Crystal City was tainted before delivering a $28 million verdict against the company in 2005. The town's city manager, who was dating a local lawyer that helped sign up the case for him, served on the jury but didn't disclose her relation to the case. That local lawyer had referred the case to Mr. Watts, who later won his argument against a new trial when two jurors recanted their statements that the city manager influenced their decision (*see* Exhibit 30); and

- Documented ties to South Texas case runner Willie Garcia (Hidalgo County criminal case (*see* Exhibit 31).

57.     Furthermore,

"[T]he notion that the number of deckhands was the driving factor during negotiations in determining the overall amount is absurd, and that just $130 million was allocated to deckhands. . . ." "BP's overreaching attempt to hold the entire seafood program hostage is part of its continuing effort to rewrite history and the settlement agreement, . . .."[27]

58.     The facts do not support BP's claim that it was misled. Nor could its alleged reliance be reasonable and/or justified. The ones that were truly misled, or at least were negligently misled are: the federal courts, the media, the general public, and the class members -- hardworking men and women of the seafood industry whose livelihoods were destroyed by BP's reckless conduct and whose lives now were crushed by the misconduct of Mr. Watts, their very own class counsel and trial counsel.

## C. THE REALITY OF THE BP LAWSUIT AND WATTS' ACTION

59.     That BP's alleged reliance is unjustifiable, however, does not help many fishermen at this time. The reality of BP's lawsuit is that these fishermen will realize a significant delay before they receive payments from the Fund.

60.     **First,** the District Judge will likely deny BP's request for an injunction. **Second,** the 5th Circuit may likely agree with BP and grant the requested injunction to stop the second round of payments to fishermen in February of 2014, as the Fifth Circuit Court of Appeals has ruled in BP's favor twice already on issues concerning the business economic loss claims. Then the District Court will invite the parties to submit briefs. Then the District Court will rule. Then BP will appeal to the 5th Circuit again. In the meantime, the DHECC stops paying the class representatives' claims. **Third,** the BP lawsuit will greatly delay the rightful payments to the fishermen who are entitled to these payments. In fact, the BP lawsuit against Mr. Watts is extremely devastating to many fishermen. Many fishermen have been on the verge of

---

[27]     *The New York Times* on December 18, 2013, titled *BP Accuses Texas Lawyer of 'Brazen Fraud' in Workers' Claims Over Gulf Oil Spill.* (Exhibit 32.)

bankruptcy.  In addition, the harvest has been really bad.  After a few years, now the dispersants, namely Corexit 9500 and9527, that BP used to clean the oil spill in 2010, has had a deadly effect on the aquatic life and sea creatures.[28]The fishermen have relied on these second round payments

---

[28]     *See* David Kirby, *Corexit, Oil Dispersant Used By BP, Is Destroying Gulf Marine Life, Scientists Say.* http://www.huffingtonpost.com/2013/04/25/corexit-bp-oil-dispersant_n_3157080.html

Three years ago, when BP's Deepwater Horizon began leaking some 210 million gallons of Louisiana Crude into the Gulf of Mexico, the U.S. government allowed the company to apply chemical "dispersants" to the blossoming oil slick to prevent toxic gunk from reaching the fragile  bays, beaches, and mangroves of the coast, where so much marine life originates. But a number of  recent  studies show that BP and the feds may have made a huge mistake, for which everything from microscopic organisms to bottlenose dolphins are now paying the highest price.

After the spill, BP secured about a third of the world's supply of dispersants, namely Corexit9500  and 9527, according to *The New York Times*. Of the two, 9527 is more toxic. Corexit dispersants emulsify oil into tiny beads, causing them to sink toward the bottom. Wave action and wind turbulence degrade the oil further, and evaporation concentrates the toxins in the oil-Corexit mixture, including dangerous compounds called polycyclic aromatic hydrocarbons (PAHs), known to cause cancer and developmental [injuries .BP began   spraying the Gulf, and critics cried foul. They said Corexit is not only toxic to marine life on its own, but when combined with crude oil, the mixture becomes several times more toxic than oil or dispersant alone.

Not surprisingly, BP Chief Executive Bob Dudley defended use of the dispersant. "The toxicity of Corexit is about the same as dish soap, which is effectively what it is and how it works," he told   stockholders."In hindsight no one believes that that was the wrong thing and it would have been much worse without the use of it. I do not believe anybody—anybody with almost common sense—would say waves of black oil washing into the marshes and beaches would have been a better thing, under any circumstances."

BP says that Corexit is harmless to marine life , while the Environmental Protection Agency has waffled, saying both that "long term effects [of dispersants] on aquatic life are unknown" and that data "do not indicate any significant effects on aquatic life. Moreover, decreased size of the   oil  droplets  is  a  good indication that, so far, the dispersant is effective."

But many scientists, such as Dr. William Sawyer, a Louisiana toxicologist, argue that Corexit can be deadly to people and sea creatures alike. "Corexit components are also known as deodorized kerosene," Sawyer said in a written statement for the Gulf Oil Disaster Recovery Group, a legal consortium representing environmental groups and individuals affected by the Deepwater Horizon spill. "With respect to marine toxicity and potential human health risks, studies of    kerosene exposures strongly indicate potential health risks to volunteers, workers, sea turtles, dolphins, breathing reptiles and all species which need to surface for air exchanges, as well as birds and all other mammals." When Corexit mixes with and breaks down crude, it makes the oil far more "bioavailable" to plants and animals, critics allege, because it is more easily absorbed in its emulsified state.

Sawyer tested edible fish and shellfish from the Gulf for absorption of petroleum hydrocarbon (PHC), believed to have been facilitated by Corexit. Tissue samples taken prior to the accident   had no measurable PHC. But after the oil spill, Sawyer found tissue concentrations up to 10,000  parts per million,

to be paid in February of 2014 as contracted and promised by BP. Specifically, the second round of payment was supposed to be recommended by Seafood Neutral in January, 2014, to Judge Barbier, to be distributed in late February 2014. Although Judge Barbier has not ruled yet on BP's injunction request, the second round of payments undoubtedly will be halted, and even the first round payments to many fishermen will, as a practical matter, be delayed by the DHECC in light of the BP Lawsuit. For example, since the 5th Circuit's October 2 and December 2, 2014, rulings on the issues concerning the matching issues and causation for the business economic loss (BEL) claims, even the first round of seafood claim payments which have nothing to do with the BEL appeal process have been delayed. Since October 2, 2013, the DHECC has been very concerned about being criticized and has paid very little to seafood claimants.

### V. CLASS ACTION ALLEGATION

61.     Plaintiffs bring this action on their own behalf, and on behalf of all other persons similarly situated ("the Classes"). Specifically, Plaintiffs seek to represent three putative classes:

**A. Class 1:** All persons who are members of the Class Action for Private Economic Losses and Property Damages and whose identities were misappropriated by Defendants.

62.     Under Class 1**,** Plaintiffs Tam V. Le, Thim T. Nguyen, Dung Van Nguyen, Hung Van Pham, Tai Lam, Minh Tan Vo, and David Nguyen, are already class members of the Class Action for Private Economic Losses and Property Damages.

63.     **Specifically, under Class 1**, Plaintiffs seek to represent: **(1)** those individuals and entitie*s* who are already class members and who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but who received the "Dear Client" Letter and whose identities were included in Mr.

---

or 1 percent of the total. The study, he said, 'shows that the absorption [of the oil] was enhanced by the Corexit."

Watts' PSC application materials**; (2)** those individuals and entit*i*es who are already class members and who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but in whose name a pleading and/or a short-form joinder was filed  in federal court or the JPML by Mr. Watts and WG**; (3)** those individuals and entit*i*es who are already class members and who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but in whose name Mr. Watts and WG presented claims to either BP, the GCCF, the DHECC, or BP Claim Program**; (4***)* those individuals and entities who are already class members and who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but who received a substantially similar version of the "Dear Client" letter as set forth herein; and **(5***)* those individuals and entities and who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but who received the DHECC's submission forms requesting that these non-clients fill out the DHECC forms, sign, and attach income tax returns, and send back to Mr. Watts and WG in order to receive monetary compensation.

**B. Class 2 consists of:** Plaintiffs represented by L.V. Marine Corporation, Natural Nine LLC, Lady More LLC, Quyet Pham, Nhat Van Nguyen, and Duy Quoc Ha who are appearing individually and as representatives of thousands of fishermen (boat owners, captains, and crew Members) who are members of the Class Action for Private Economic Losses and Property Damages under the Seafood Program, and who have been and will be severely injured by Defendants' misconduct, because their payments from the Seafood Settlement Fund, which was

supposed to be recommended and distributed in late February or March of 2014 by Seafood Neutral and the DHECC, have been requested to be suspended by BP.[29]

**C. Class 3 consists of:** Plaintiffs  Lee Nguyen, Lisa Nguyen, and Lien Nguyen,  Thanh -Linh Vu Nguyen, Theresa T. Nguyen, and Thinh T. Nguyen who appear individually and as representatives of the proposed class(es) of non-members of the Class Action for Private Economic Losses and Property Damages, and whose identities were misappropriated by Defendants.

64.     Under Class 3, the non-class members are: **(1)** those individuals and entities who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but whose identities were included in Mr. Watts' PSC application materials; **(2)** those individuals and entities who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but in whose name a pleading and/or a short-form joinder was filed in a federal court or the JPML by Mr. Watts and WG; **(3)** those individuals and entities who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but in whose name Mr. Watts and WG presented claims to either BP, the GCCF, the DHECC, or BP Claim Program; **(4)** those individuals and entities who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing Mr. Watts and WG to file suit or submit claims on their behalf, but who received a substantially similar version of the "Dear Client" letter as set forth herein; and **(5)** those individuals and entities who did not sign a written contingency fee agreement and a written consent to refer agreement authorizing

---

[29]The value of these plaintiffs' second round payments will be deducted from the undersigned attorneys' fees and are to be reserved for this class of Plaintiffs and their counsel who have assisted them in filing claims with the DHECC.

Mr. Watts and WG to file suit or submit claims on their behalf, but who received the DHECC's submission forms requesting that these non-clients fill out and return to Defendants the DHECC forms, sign, and attach income tax returns, in order to receive monetary compensation.

## VI. EXCLUSION

65.    The proposed class(es) excludes (1) any individual or entity that directly retained Mr. Watts, Mr. Guerra, Mr. Craft or any attorney employed by WG and who signed a written contingency fee agreement authorizing suits be filed on their behalf by said attorneys; and (2) any individual or entity that was, with their knowledge and consent, referred by a licensed attorney to Mr. Watts, Mr. Guerra, Mr. Craft or any attorney employed by WG and who signed both a written contingency fee agreement and written consent to refer authorizing Mr. Watts or WG to file suit or assert claims on their behalf.

66.    The members of the Classes are so numerous that the joiner of all members is impractical. While the exact number of class members is unknown to Plaintiffs at this time, the Class is estimated to be in the tens of thousands.

67.    There are common questions of fact and law common to the Classes as all members of the Classes were subject to the same misappropriation of identities committed by Defendants, under the same factual circumstances. Common questions of law include those listed below.  The claims of the Plaintiffs are typical of those of the members of the Classes because Plaintiffs suffered the same harms, and therefore have the same claims. Plaintiffs and their counsel will fairly and adequately represent the members of the Classes because Plaintiffs are committed to this litigation, have no conflicts of interest, and have retained counsel with experience in class action litigation.

68.    Given the immense size of the Classes and the overwhelming predominance of common factual issues, class adjudication of this matter is clearly preferred.

69.     Plaintiff anticipates no difficulty in the management of this litigation as a class action and the Class is readily definable. Prosecution as class action will eliminate the possibility of repetitious litigation while also providing redress for claims that may be too small to support the expense of individual, complex litigation.

70.     For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Certification, therefore, is appropriate under Rule 23(b)(1) or (b)(3) of the Federal Rules of Civil Procedure.

## VII. CIVIL RICO SECTION 1962 (c) CLAIM

71.     Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

72.     Plaintiffs assert Watts, WG, and their co-conspirators violated the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. Section 1964(a) establishes jurisdiction in district courts of the United States to restrain violations of Section 1962 (c).  Section 1962(c) provides as follows:

73.     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

74.     Section 1962(c) requires Plaintiffs to prove by a preponderance of the evidence that Mr. Watts managed the affairs of an enterprise or association-in-fact enterprise (here WG and its successor firms) to commit a pattern of racketeering activity.  Thus, "[t]he two crucial elements which [must be] prove[n] to sustain a conviction under Section 1962 (c) are the defendants' association with an `enterprise' and the existence of a `pattern of racketeering activity.'" *United States v. Morris,* 532 F.2d 436, 441 (5th Cir. 1976).  In the instant case, through the facts stated

above, Plaintiffs have adequately demonstrated that Defendants are associated with an "enterprise" as defined under Section 1961(4).

75.     Plaintiffs have also established that there was in this case a "pattern of racketeering activity" within the meaning of RICO. Under Section 1961(5) there must be at least two acts of racketeering activity, occurring within ten years of each other, in order for there to be a pattern of such activity.  *See* Factual Background, *supra*—Watts, WG and their co-conspirators' pattern of such misappropriation identities from other cases.

76.     "Racketeering activity" is defined in Section 1961(1). It includes four broad categories of crimes, among them are: (A) any of several specified acts or threats not specifically alleged herein, and (B) any act which is indictable under several specified sections of title 18 U.S.C. *See* 18 U.S.C. Section 1961(1).

77.     Under Section 1962(c), among other remedies, the civil Plaintiffs may recover triple damages for injury by reason of a violation of Sections 1962(a), (b), (c) or (d).

78.     This Count is against Mr. Watts and the other Defendants, individually, and WG.

79.     Mr. Watts and the other Defendants, individually, and WG, as set forth herein, are engaged in the multi-state practice of law; and their individual and enterprise activities affect interstate commerce.

80.     Mr. Watts and the other Defendants, individually, and WG agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding the class of plaintiffs (by obtaining a position on the PSC to avail himself of the fees associated therewith, thus rendering millions  of dollars in fees unavailable for settlement purposes to members of the class).  This is consistent with Mr. Watts and the other Defendants' established pattern of behavior, as described above in instances such

as the *Rivas* matter and others, of placing his and their individual and enterprise financial interests above the best interests of the clients and the profession and rule of law.

81.    Pursuant to the purpose of their racketeering activities, Mr. Watts and the other Defendants, individually, and WG committed multiple related predicate acts of mail and wire fraud with regard to the putative class representatives, including but not limited to the following:

•    On or about June 14 and/or July 27,2010, via regular mail sent by the U.S. Post Office, each of the Vietnamese Plaintiffs Tam V. Le, Thim T. Nguyen, Minh Tan Vo, Dung Van Nguyen, Lisa Nguyen, Lee Van Nguyen, Thanh-Linh Vu Nguyen, and Lien Nguyen received a "Dear Client" letter signed by Mikal Watts. These Plaintiffs, in fact, never met nor signed any fee contract with Watts or any of his referral lawyers. Each "Dear Client" letter that each Plaintiff received had the same content as the "Dear Client" letter sent to Tam Le described above sent to Tam Le on June 14, 2010. A few samples of the "Dear Client" letter sent to Plaintiffs are illustrated below:

WATTS | GUERRA | CRAFT
BP GULF OIL SPILL LITIGATION

2506 N. Port Avenue                    July 27,2010 Corpus Christi, Texas 78401
877-631-4046 or 877-389-2954 PHONE

Lien Nguyen
1142 Louise St.
Thibodaux, LA 70726

RE:    BP Deepwater Horizon Oil Spill of Nguyen, Lien (288244)

Dear Lien:

I am very happy that you have chosen our law firm to represent you in the case of economic damages due to the Deepwater

Horizon Oil Spill.  This letter is sent to you as our first update of our work progress informing you of what I believe will happen to your lawsuit in the next few months.

First, you must be careful!  BP is offering minimum compensation in exchange for your lawsuit.  **Do Not Sign anything from BP or anyone else besides Watts Guerra Craft.**  We are your attorneys and we are here to help you with all aspects of your claim.

Second, after you sign this contract with our law firm, sign the tax release form, and fill out our inquiry form, we will the enter your information into our law firm database.  We now have over 15,000 commercial fishermen, shrimpers, and boat owners in this lawsuit and all their information is being placed in our computer database for backup.  We are in the process of reviewing your file to ensure that we have all the important information needed, including, but not limited to, social security numbers and commercial fishing licenses.   We will contact you in the near future if we need additional information regarding your claim.  It is very important for you to provide this information for your claim.

Third, if you live in Texas, your lawsuit has been filed in the State of Texas against BP, Transocean, and Cameron.  And if you live elsewhere, your law suit has been filed in the federal court against the three defendants, as well as against Halliburton.  A copy of your file is on our website, and can be accessed at http://masstort.wgelawfirm.com/ just by clicking on "Documents" on the upper left corner under the name BP, then click on your case number 4:10-cv-02622.

Fourth, we already submitted a copy of your file to the attorney that is representing BP.  This month, we expect to have more discussions with them regarding the upcoming process.  We intend to engage early with the BP and the other defendants.

Fifth, as cases have been filed by many different lawyers in different jurisdictions; a motion to consolidate this lawsuit in a MDL (Multi-District Litigation) has been filed.  The consolidation is scheduled to meet on July 29 in Boise, Idaho with the Multi-District Litigation Panel.   I expect the consolidation will be arranged, and most of the lawsuits filed in the federal court will be

centralized before one federal judge.  Once we know where and what court, we will engage quickly in the litigation procedures of that court, in order to gain a leading central role in this litigation process thereafter.

Sixth, I have served for the Plaintiffs' Steering Committee (PSC) for previous cases, and I will apply this leading role toward this case.  The plaintiffs' litigation team will set up in September or October, then we will proceed with the lawsuit and prepare for trial.

Seventh, as I understand the devastation of this disaster will impact thousands of lives, we intend to engage in all the settlement discussions with BP and other defendants as soon as we can. We will inform you, but you are the one will determine the settlement.

 I am looking forward to providing you the updated information periodically, and I will write more information about the plaintiffs' litigation organization once it is completed.  If you have any question, please call one of our toll-free numbers: 877-631-4046 or 877-389-2954.  We are actively working on your case until we canprovide you a written report of the updated information in a few months.

Thank you for your attention,

Mikal C. Watts[30]

SAN ANTONIO | HOUSTON | CORPUS CHRISTI | AUSTIN | EDINBURG

- On or about June, 2010, Plaintiffs Tam V. Le, Thim T. Nguyen, Tai Lam, Hung Van Pham, Minh Tan Vo,  Dung Van Nguyen, David Nguyen, Quyet Pham, Nhat Van Nguyen, Duy Quoc Ha, and Minh Tan Vo  were listed as clients on Mr. Watts' and WG's Complaints. These Complaints were filed with the Southern District of Texas, Houston Division and Eastern District of Louisiana and Multi-District Litigation

---

[30]     *See* Exhibit 24.

Panel. Their names were also listed on Watts' PSC application filed via mail and/or wire with the Eastern District of Louisiana before the Honorable Carl Barbier. (*See* "List of Names" attached as Exhibit 2.)Mr. Watts and the other Defendants, individually, and WG have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. Sec. 1962(c).

- Mr. Watts individually, WG, and other Defendants, listed as clients many Vietnamese individuals they did not represent, or whose identities had been misappropriated, or whose representation had been obtained through mail fraud and/or wire fraud.[31] Plaintiffs were listed as clients of Mr. Watts in the Deepwater Horizon Litigation when, in fact, they never were and never have been Mr. Watts' clients. Thus, these class representatives are also RICO plaintiffs who have standing to sue, because they were the intended targets, as well as victims, of the complained of activities of Mr. Watts and the other Defendants, individually, and WG.

- In fact, many of these purported Vietnamese "client" identities listed were obtained through mail fraud and/or wire fraud in violation of 18 U.S.C. Sections 1341 and 1343, as well as in violation of Texas Law (Solicitation of Professional Employment).

- By filing such claims with the Court as part of Mr. Watts' PSC application materials, Mr. Watts individually, and through WG, used enterprise-related activities to insert himself unlawfully and officiously into the legitimate claims of many thousands of vulnerable, economically injured individuals for their ulterior purposes in a scheme

---

[31] Such as by sending letters addressed to "Dear Client" to individuals who had never signed a retainer agreement and consent to refer agreement with Watts or the other Defendants.

designed and executed to persuade Judge Barbier to appoint Mr. Watts to the PSC

(for the financial benefit of Mr. Watts and the other Defendants).

82.     As a direct and proximate result of Mr. Watts and the other Defendants', individually, and

WG's racketeering activities and violations of 18 U.S.C. Sec. 1962(c), the class members have

been injured in their business and property by the unavailability to settle their damages claims,

the million of dollars of fees earmarked for Watts and his co-conspirators, individually, and their

law firm WG, but illicitly obtained by them through racketeering and other dubious and criminal

activities as alleged herein. Moreover, the Plaintiffs and their proposed class members' identities

have been used to earn Watts' position on the PSC and to further their business enterprise in

obtaining other mass torts cases.

### IX.     CLASS ALLEGATIONS -- CIVIL RICO SECTION 1962 (c) CLAIM

83.     Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

84.     Furthermore, pursuant to Fed. R. Civ. P. 23(b)(3), this action may be maintained as a

class action because questions of law or fact common to class members predominate over any

questions affecting only individual members; and a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy.

85.     The alleged damages were caused primarily by a common set of misrepresentations

("Dear Client" letters sent to non-clients; misappropriated identities listed in filings as clients,

individuals or businesses, with no valid contingent fee agreements or written consent to refer

agreements signed by clients; etc.) that ultimately resulted in the falsified client list of Mr. Watts

and the other Defendants, individually, and WG.   Cases where the same or similar

misrepresentations were made to the named plaintiffs and putative class members have been

commonly certified. *See* footnote 32.[32]  The Plaintiffs injuries under Section 1962(c) stem from the predicate acts, as identified herein, of Mr. Watts and the other Defendants, individually, and WG.

86.     The class is so numerous that joinder of all members is impracticable.

87.     There are questions of law or fact common to the class.

88.     The claims or defenses of the representative parties are typical of the claims or defenses of the class.[33]

The representative parties and counsel will fairly and adequately protect the class.

## X.  VIOLATION  OF 42 U.S.C. SEC. 1985 (3) AS DEFENDANTS AND THEIR CO-CONSPIRATORS HAVE ACTED OUT OF A CLASS-BASED ANIMUS AGAINST  VIETNAMESE PERSONS BY USING IDENTITIES OF THE VIETNAMESE

89.     Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

90.     Mr. Watts, WG, and their co-conspirators have conspired for the purpose of depriving Plaintiffs and the putative class of equal protection of the laws and of equal privileges and immunities under the laws. The Defendants have acted out of a class-based animus against Vietnamese persons by targeting and using the identities of mainly the Vietnamese.  In *McLellan v. Mississippi Power and Light Co.,*545 F.919, 923 (5th Cir. 1977) (*en banc*), the elements that a plaintiff must allege and prove for a 42 U.S.C. § 1985(3) cause of action, are set forth as follows:

---

[32]     *See e.g. Klay v. Humana*, 382 F.3d 1241, 1247-49 (11th Cir. 2004) (ruling that standard misrepresentation justified class certification; *Eisenberg v. Gagnon*, 766 F.2d 770, 786-87 (3d Cir. 1985) (ruling that class should have been certified where named plaintiffs, and presumably class members, relied on virtually identical offering materials); *Chisolm v. TranSouth Financial Corp.,* 184 F.R.D. 556, 564 (E.D. Va. 1999) ("churning" scheme used to sell, repossess, and resell used cars utilized uniform documents and a single plan to support typicality requirement).

[33]     The United States Supreme Court decision in *Bridge v. Phoenix Bond & Indemnity Co.,* 128 S. Ct. 2131 (2008) opened the door to the broader application of class certification of RICO class actions. Specifically, in *Bridge*, a RICO case that did not involve a class action, the Court held that a plaintiff asserting a RICO claim predicated on mail fraud may be able to establish proximate cause without showing that the plaintiff relied on the alleged misrepresentations. *Id.* at 2145. Thus, under *Bridge*, the individual issues of reliance do not predominate over other common issues.

91.     (1) The defendants must conspire; (2) For the purpose of depriving, either directly, or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) The defendants must act in furtherance of the object of the conspiracy, whereby (4) one was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States.  In order to demonstrate a violation of the equal protection of laws section, it must be demonstrated that the plaintiffs have been subjected *to racial or other class-based invidious discrimination by the conspirators' actions.* The actions of the defendants' conspiracy must demonstrate a violation of some law, independent of § 1985(3). That Watts, WG and their co-conspirators mainly targeted and used identities of mainly the Vietnamese Fishermen who do not speak English well in itself demonstrated that Plaintiffs have been subjected *to racial or other class-based invidious discrimination by the conspirators' actions.* It is clear that Watts, WG, and their co-conspirators have acted together and the evidence establishes that those actions have had the effect of depriving the plaintiffs of their equal protection of the laws. Watts and his co-conspirators acted in furtherance of the object of the conspiracy, whereby the Vietnamese fishermen were injured in their property. The specific laws have been violated by the Defendants will be discussed herein.

### XI.     VIOLATION  OF 42 U.S.C. SEC. 1986
### AS DEFENDANTS AND THEIR CO-CONSPIRATORS HAVE ACTED OUT OF A CLASS-BASED ANIMUS AGAINST VIETNAMESE PERSONS BY TARGETING AND USING IDENTITIES OF THE VIETNAMESE

92.     Plaintiffs adopt each paragraph set forth above as if fully set forth herein. Watts, WG, and their co-conspirators have violated Plaintiffs' rights by engaging in conduct made unlawful under 42 U.S.C. Section 1986. Section 1986 is a companion to Section 1985. It creates a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in[Section 1985], are about to be committed, and having power to prevent

or aid in preventing the commission of the same, neglects or refuses to do so." *See Dowsey v. Wilkins,*467 F.2d 1022 (5thCir.1972).The rights protected under Section 1986 are those rights which are safeguarded under Section 1985.

### XII.   VIOLATION  OF 42 U.S.C. SEC. 198I
### AS DEFENDANTS AND THEIR CO-CONSPIRATORS HAVE ACTED OUT OF A CLASS-BASED ANIMUS AGAINST VIETNAMESE PERSONS BY TARGETING AND USING IDENTITIES OF THE VIETNAMESE

93.   Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

94.   By targeting and using identities of mainly Vietnamese fishermen, Defendants have deprived Plaintiffs of the full and equal benefit of laws and proceedings for the security of persons, as is enjoyed by white persons, in violation of 42 U.S.C. Section 1981. Section 1981 is constitutionally supported by the implementing of clauses of the Thirteenth and Fourteenth Amendments. *McDonald v. Santa Fe Trail Transportation Co.,*427 U.S. 273 (1976), on remand 540 F.2d 219 (5th Cir.); *Runyon v. McCrary,*427 U.S. 160 (1976), later app. 569 F.2d 1294 (4th Cir.), *cert. denied,* 439 U.S. 927. In *Jones v. Alfred H. Mayer Co.,*392 U.S. 409 (1968) the Supreme Court indicated that the Civil Rights Act of 1866, which was the forerunner of Section 1981, was designed "to prohibit all racial discrimination, whether or not under color of law [...]" and as such was within the constitutional power of Congress under the Thirteenth Amendment. The rationale of the *Jones* case, which authorized a private cause of action for discrimination in the sale or rental of property under 42 U.S.C. Section 1982, has been followed in actions under 42 U.S.C. Section 1981, *Penn v. Schlesinger,* 490 F.2d 700, 703 (5th Cir. 1973) *cert. denied,* 426 U.S. 934 (1976); *Boudreaux v. Baton Rouge Marine Contracting Co.,*437 F.2d 1011, 1016 (5th Cir. 1971); *Sanders v. Dobbs Houses, Inc.,*431 F.2d 1097, 1099 (5th Cir. 1970), *cert. denied,* 401 U.S. 948(1971). Since there is no "state action" or "color of law" requirement under 42 U.S.C. Section 1981, private citizens are proper defendants in suits arising out of purely private

relationships. *Id. See also Caldwell v. National Brewing Co.,* 443 F.2d 1044 (5th Cir. 1971), *cert. denied,* 405 U.S. 916 (1972).Section 1981 also protects a panoply of individual rights the primary one being the right to contract to enjoy a living. *E. g., Johnson v. Railway Express Agency,* 421 U.S. 454 (1975); *Penn v. Schlesinger, supra,* 490 F.2d 702; *Guerra v. Manchester Terminal Corp., supra; Boudreaux v. Baton Rouge Marine Contracting Co., supra.* In order to demonstrate a violation of Section 1981, it is only necessary that the plaintiffs show that they were unlawfully denied, by Defendants, one of the rights protected by this statute. 1 C. Antieau, *Federal Civil Rights Acts* §§ 32, 33 (2d Ed. 1980). The Settlement Agreement is a contract between BP and class counsel on behalf of all class members. Defendants' conduct, which resulted in Plaintiff's receipt of the Second Round of Payment (Plaintiffs under Class 2) being delayed,  interferes with Plaintiffs' ability to  survive and/or their ability to continue their fishing business, and thus giving rise to a denial of their contractual rights under 42 U.S.C. Section 1981. Section 1981 also provides that "[a]ll persons ... shall have the same right ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." It is well established that the "full and equal benefit of all laws" guarantee of Section 1981 applies to private action. *See Central Presbyterian Church v. Black Liberation Front,* 303 F.Supp. 894, 901 (E.D.Mo.1969).

### XIII.   MISAPPROPRIATION OF IDENTITY

95.     Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

96.     Under the common law, the elements of a cause of action for appropriation of name or likeness are the following: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it; (2) the plaintiff can be identified from the publication; (3) the defendant

received some advantage or benefit from the appropriation; and (4) the plaintiff suffered an injury as a result of defendant's appropriation.[34]

97.    Mr. Watts and the other Defendants appropriated Plaintiffs' identities for the value they conferred upon Mr. Watts in the PSC application process and for the financial value associated with Plaintiffs' underlying Deepwater Horizon claims and other referred mass tort litigations.

98.    Specifically, Mr. Watts and the other Defendants represented that these individuals were their clients in filings made with the Court, GCCF and DHECC when, in fact, these persons had signed neither a written contingency fee agreement nor written consent to refer entitling Mr. Watts and WG to do so.

99.    The Watt application to serve on the PSC inaccurately represented to Judge Barbier that Mr. Watts was the attorney of record for tens of thousands of these Vietnamese individuals in order to obtain a seat on the PSC, based largely in part on the perception that Mr. Watts had more clients than anyone else. Specifically, Mr. Watts included the identities of tens of thousands of such individuals and, in the process, misrepresented to United States District Court Judge Barbier that he was the attorney of record for 44,510 clients in BP.  Mr. Watts and the other Defendants gained substantial advantages and benefits from the misappropriation of these Plaintiffs' identities.  Specifically, Mr. Watts and the other Defendants used the inflated numbers

---

[34]    Restatement of the Law, Second, Torts, Sec. 652C Appropriation of Name or Likeness states: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."  The Comment (b) explains, "The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose.  Apart from the statute, however, the rule stated is not limited to commercial appropriation.  *It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one*" (emphasis added).

52

of Vietnamese clients to secure Mr. Watts a place on the PSC and used such position to obtain

other mass tort cases for his/their tremendous financial benefit.[35]

Furthermore, BP's lawsuit against Mr. Watts and WG filed on December 17, 2013, was

the final straw that broke the camel's back.  Regardless of the rulings of Judge Barbier and the

5th Circuit, Seafood Neutral and the DHECC will practically delay the second round of payment

to (and consequently will severely damage) tens of thousands of fishermen, including Plaintiffs

in this case, who are true seafood claimants and truly suffered the losses. Additionally, in the

context of misappropriation of name or likeness, under Texas law and other laws, damages can

be recovered, including punitive damages if gross negligence is found, by those whose identities

were misappropriated when there has been a violation of a legal right.

## XVI. DECEPTIVE TRADE PRACTICES ACT CLAIM

100.    Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

101.    In the alternative, because WG is a Texas law firm, and because the materials at issue

originated from its Texas offices, the Texas Deceptive Trade Practices Act ("DTPA") applies to

the claims of all putative misappropriation of identity class members.

102.    Because the DTPA does not require privity, a non-client can sue for violations of the

DTPA.  A non-client can bring a DTPA suit against an attorney if the attorney is engaged in a

---

[35]    The financial value of each misappropriation may be calculated once the final number of class members whose identities were misappropriated is determined through discovery. We assert that there are over forty thousand (40,000) such class members whose names Watts used as his and his firm "clients." And since Watts and WG obtained fees from their other multi-district litigations and any cases after September of 2010, **via his "fame" and his lead trial team position with the BP Multi-District Litigation (MDL 2179) and this position was obtained, at least in part, from these over 40,000 Vietnamese names**, this amount may be then divided by the number of misappropriated identity plaintiffs/"clients" to place a financial value per claim.  This is  an example of a calculation model for damages to be paid by Watts and the Co-Defendants from their own pockets.  Under Texas law, for a breach of fiduciary duty, the plaintiffs are not required to show actual damages in order to recover for this type of claim. The Plaintiffs trust that this Court is a Court of equity and submit that justice be granted to these class members.  On December 17, 2013, BP sued Mr. Watts and his Firm and further requested part of $2.3 billion settlement payment for the second round to the fishermen be stopped. The stopping and/or the delay of any payment will practically damage thousands of fishermen, who are true seafood claimants who truly suffered the losses.

false, misleading, or deceptive act or practice in the representation of his client.  *See* Tex. Bus. & Com. Code Sec. 17.46.

103.    Plaintiffs can maintain a DTPA suit based on any unconscionable action or course of action. Tex. Bus. & Com. Code Sec. 17.50(a)(3).  An unconscionable act or practice is one that, to a consumer's detriment, takes advantage of a consumer's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Tex. Bus. & Com. Code Sec. 17.45(5).

104.    Mr. Watts and the other Defendants misrepresented to various federal courts, the JPML, United States District Court Judge Barbier, the GCCF, the DHECC, and the Claim Administrators that tens of thousands of Vietnamese individuals were their clients when, in fact, they were not and never have been, and they did not have a written, signed contingent fee agreement or any written consent to refer with WG permitting Defendants to make such representations.  Plaintiffs can be easily identified (specifically, each such putative class member listed as a client of Mr. Watts and the other Defendants in the PSC application materials or with the GCCF but for whom Mr. Watts and the other Defendants cannot produce the signed retainer agreements and signed written consents to refer).

105.    Mr. Watts and the other Defendants target-mailed certain written materials to thousands of economically vulnerable Vietnamese individuals for whom they did not have a signed written contingency fee agreement and written consent to refer to represent them in the Deepwater Horizon Litigation.  In said materials, Mr. Watts misrepresented himself as these Vietnamese individuals' attorney and otherwise held himself out to be their duly appointed legal representative in the claims processing and litigation (instructing them not to sign anything with anyone other than his firm). In doing so, he committed and participated in an unconscionable act or practice in that, to a consumer's detriment, he and WG took advantage of the consumer's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. This applies equally

both to clients he sent these "Dear Client" letters without authority and to clients that gained by this scheme (by said individuals returning the materials requested by Watts in the improper solicitation and in that way forming a relationship with him).Furthermore the continuous fraud tolled the statute of limitations.

106.    Plaintiffs have suffered damages as a result.

### XVII. BREACH OF THEIR  FIDUCIARYDUTY TO THE CLASS MEMBERS

107.    Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

108.    By virtue of Watts' position as class counsel and a member of the PSC from October 2010 to February 2013,Watts, WG, and their co-conspirators were (and continue to be) in confidential, special and/or fiduciary relationships with the Plaintiffs and the members of the putative class. As fiduciaries, the Defendants owed (and continue to owe) to the Plaintiffs and Class members:

> i.     the commitment to deal fairly and honestly,
>
> ii.    the duties of good faith and undivided loyalty, and
>
> iii.   integrity of the strictest kind. Watts, WG, and their co-conspirators were (and continue to be) obligated to exercise the highest degree of care in carrying out their responsibilities to the Plaintiffs and the members of the putative class under such confidential, special and/or fiduciary relationships.

109.    Watts, WG, and their co-conspirators breached their fiduciary duties to the Plaintiffs and Class members. To the extent that either Watts, WG, and their co-conspirators are fiduciaries who did not breach the duties outlined above, Watts, WG, and their co-conspirators are nonetheless liable because they had knowledge of the breaches of fiduciary duty committed by other fiduciaries, and did not make reasonable efforts under the circumstances to remedy such

fiduciary breaches. To the extent that either Watts, WG, or their co-conspirators are not a fiduciary, such Defendants are nonetheless liable because they engaged in transactions with a breaching fiduciary under circumstances in which they knew (or should have known) about such fiduciary breaches. Watts, WG, and their co-conspirators breached their fiduciary duties to the Plaintiffs and Class members by their wrongful actions described above. Watts, WG, and their co-conspirators willfully and wantonly breached their fiduciary duties to Plaintiffs and Class members or, at the very least, committed these breaches with conscious indifference and reckless disregard of their rights and interests. Watts', WG's, and their co-conspirators' wrongful actions constitute breach of fiduciary under Texas law, Louisiana law, and other state common laws.

110.    Specifically, Mr. Watts (as a former member of the PSC); *his Firm; and Watts' co-conspirators* have known all along that Watts' Vietnamese fishermen were not, and still are not, really their clients and that the Vietnamese fishermen's names were used.  By hiding these facts for their personal gain, Mr. Watts, as a former member of the PSC and his Firm, WG, and their co-conspirators, breached the fiduciary duty as a member of the PSC to all other relevant Deepwater Horizon class members , including those whose identities Watts misappropriated. As Class Counsel and Trial counsel and a former member of the PSC, Watts, and his co-conspirators, owed a duty to all plaintiff class members, including members of the seafood program. Their conduct constituted a breach of their fiduciary duty and conspiracy to breach the fiduciary duty. Plaintiffs, as class members of the Settlement Program, have suffered damages as a result.

## XIX.  NEGLIGENCE

111.    All preceding paragraphs are re-alleged as if fully set forth herein.

112.    Watts had a confidential, special and/or fiduciary relationships with Plaintiffs and Class members by virtue of being member of the PSC and Class trial counsel since October 2010.  At

56

the very least, Watts, WG, and their co-conspirators had a duty to use reasonable means to protect the class members. Watts, WG, and their co-conspirators also had a duty to protect the identities of members of the class, including a duty to comply with applicable laws. Watts, WG, and their co-conspirators also had a duty, to protect Plaintiffs and class members, by timely informing the courts, the GFCC, the DHECC, the other members of the PSC, and Plaintiffs and Class members that they could not comply with  the requests of BP and the GCCF. Upon learning of the harm, Defendants and their co-conspirators should have taken  immediate action to protect Plaintiffs and Class members from the foreseeable consequences of the harm.

113.    As a member of the PSC and trial counsel of the class and officer of the Court from October, 2010 to March, 2013, Watts needed to inform all parties concerned, the courts, the GCCF, the DHECC, the PSC, and the members of the class that he did not in fact have in his possession the retainer fee agreements and contracts to protect Plaintiffs and Class members from the foreseeable consequences of the harm. Watts and his co-conspirators also knew (or should have known) that he had a duty to do so.

114.    The damages suffered by Plaintiffs and Class members, were the direct and proximate result of Defendants' negligence. Defendants' wrongful actions constitute negligence.

## XX. CONSPIRACY CLAIM

115.    Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

116.    Mr. Watts and the other Defendants and their partners and/or employees at WG and his co-conspirators were members of a combination of two (2) or more persons.

117.    The object of the combination was to accomplish a lawful purpose (acquiring clients in the Deepwater Horizon Litigation and ultimately for Mr. Watts to be appointed to the PSC) through unlawful means (obtaining alleged "clients" by misappropriation of identity and improper solicitation and listing them in filings before the court, the GCCF and other locations).

118.    The members had a meeting of the minds on the object or course of action as evidenced by the fact that, in addition to actions of Mr. Watts as discussed throughout, Mr. Craft was listed as "Attorney-in-Charge" on many of the filings listing the Vietnamese clients at issue, and that the actions at issue continued even after publication of the *Times* article referenced, establishing the partners' implicit endorsement and approval of the scheme being conducted by his partners Mr. Watts and Mr. Craft.

119.    Mr. Watts and the other Defendants, as well as additional employees of WG, committed multiple unlawful overt acts, as set forth herein, to further the object or course of action.  As a result of this conspiracy, Mr. Watts is now the subject a Secret Service investigation and has resigned from the PSC; and Mr. Craft is no longer a member of the firm.

120.    Plaintiffs suffered injury as a proximate result of the wrongful acts.

## XXI. DAMAGES

121.    Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

122.    Plaintiffs, individually and as representatives of the proposed class(es), pray for all damages to which they are entitled under both law and equity herein, including but not limited to actual damages, mental anguish, punitive damages, treble damages, attorneys' fees, costs of court, pre-judgment and post-judgment interest at the maximum legal rate, and such other and further relief to which they may be justly entitled.

## XXII. EXEMPLARY OR PUNITIVE DAMAGES

123.    Plaintiffs adopt each paragraph set forth above as if fully set forth herein.

124.    Mr. Watts, the other Defendants, and other attorneys have appropriated identities and breached the fiduciary duty they owed to both Plaintiffs and members of the putative class.  In the alternative their action constituted gross negligence. Thus, the classes sue Mr. Watts and the other Defendants for exemplary or punitive damages under Chapter 41 of the Texas Civil

Practice and Remedies Code, Louisiana law and other state laws. Because Defendants' tortious and wrongful conduct violated the Texas Penal Code, exemplary or punitive damages in this case are not limited under Sec. 41.008 (b) of the Texas Civil Practices & Remedies.  As such, Plaintiffs request Defendants to jointly and severally pay an amount of One Billion Dollars ($1,000,000,000.00) as exemplary or punitive damages to deter others from engaging in similar misconduct. Plaintiffs allege that exemplary damages in this case are warranted and should be awarded in a manner that takes into account the nature of the wrongful actions of Defendants, the character of the conduct involved, the degree of the Defendants' culpability, the situation and sensibilities of the parties, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of Defendants.

## XXIII. CONSTRUCTIVE TRUST AND SUIT FOR AN ACCOUNTING

### Mr. Watts and WG used Watts' fame as member of the Plaintiff's Steering Committee in the Deepwater Horizon Oil Spill, the largest mass tort and class action in the United States, to seek employment from other mass tort cases

125.    Mr. Watts and the other Defendants misused the identities of many thousands of identifiable persons with whom they had no legitimate attorney-client relationship in furtherance of their own financial scheme.  Their end goal is to obtain the massive fees that would surely flow from PSC appointment in such an immense BP mass tort and other mass tort litigations. Most importantly, Mr. Watts' appointment to the PSC of the largest MDL/mass tort litigation in the U.S. also led to many referrals of different mass tort cases to Mr. Watts and WG.

126.    Using his fame as member of the PSC and Trial Lead Position of the biggest mass tort and class action in the United States, Mr. Watts and WG also sought employment from other mass tort cases. Equity requires that any and all of his fees in the Deepwater Horizon Litigation, and any other mass tort litigations referred due to Mr. Watts' appointment to the PSC of the Deepwater Horizon Oil Spill, be disgorged in significant part or in its entirety.

59

Under Texas law (and certain other state laws), the Supreme Court has stated that the client's actual damages do not have to be suffered or proven.  Stated differently, equity requires Defendants' fees obtained from other mass tort cases referred to them by other lawyers and that came from other clients using Mr. Watts' reputation as a PSC member of the Oil Spill cases during this timeframe be disgorged to the victims whose identities were misappropriated. Mr. Watts and the other Defendants must be held fully civilly accountable for their wrongdoing. Plaintiffs request that a constructive trust be imposed on all legal fees made by Mr. Watts and WG in any litigation that they advertised based on Mr. Watts' appointment in the Deepwater Horizon Litigation.   Moreover, Plaintiffs request that a constructive trust be imposed on all legal fees "earned" in the Deepwater Horizon Litigation by Mr. Watts' and WG's co-conspirators and that those fees be forfeited.  Plaintiffs request that a constructive trust also be imposed on all legal fees of Watts and WG made in the other mass tort cases, using Watts' fame as member of the PSC and trial counsel and that those fees also be forfeited. As such, Plaintiffs are asking the Court to require Defendants to provide an accounting of  all legal fees made by Mr. Watts and WG and co-conspirators in the Deepwater Horizon Litigation and in all litigations that they advertised after his appointment to the BP Deepwater Horizon PSC.

## XXIV. JURY DEMAND

127.    Plaintiffs request that a jury be convened to try the factual issues of this case.

## XXV.  PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs, individually and on behalf of all others similarly situated, demand judgment against the Defendants, jointly and severally as follows:

1.      An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein, including appointing the Plaintiffs as Class Representatives; and appointing the undersigned counsel as counsel for the Class;

2.      Economic and compensatory damages in amounts to be determined at trial;

3.      Actual damages including specific and general damages in amounts to be determined at trial;

4.      Exemplary or Punitive damages;

5.      Pre-judgment and post-judgment interest at the maximum rate allowable by law;

6.      Attorneys' fees and costs of litigation based on statutory violation *per se*; and

7.      such other and further relief available under all applicable state and federal laws and any relief the court deems just and appropriate.

                    **Respectfully submitted,**

                    **LEAD COUNSEL:**

                    **BECNEL LAW FIRM, L.L.C**.

                    By:  /s/ Daniel Becnel
                           DANIEL BECNEL
                           La.  Bar No.2926
                           MATTHEW B. MORELAND
                           La. Bar No. 24,567
                           KEVIN P. KLIBERT
                           LA. Bar No. 26954
                           SALVADORE CHRISTINA
                           La. Bar No. 27198
                           P.O. Drawer  H
                           Reserve, La 70084
                           Telephone: (985) 536-1186
                           Telecopier:  (985) 536-6445
                           dbecnel@becnellaw.com

                    **CO-LEAD COUNSEL:**

                    **THE TAMMY TRAN LAW FIRM**
                    **ATTORNEYS AT LAW, LLP**
                    By:  /s/ Tammy Tran
                           TAMMY TRAN
                           TexasBar No. 20186400
                           ttran@tt-lawfirm.com

PETE MAI
TexasBar No. 24029702
pmai@tt-lawfirm.com
JOHN NA
TexasBar No. 24074786
jna@tt-lawfirm.com
RYAN NGUYEN
TexasBar No. 24083570
rnguyen@tt-lawfirm.com
2915 Fannin
Houston, Texas 77002
Telephone: (713) 655-0737
Telecopier: (713) 655-0823


**HILL & HILL, P.C. LAW FIRM**
J. MARCUS HILL
Texas Bar No. 09638150
1770 St. James Place, Suite 115
Houston, Texas 77056
Telephone: (713) 688-6318
Telecopier: (713) 688-2817

**TOVA VISHNEVSKY**
New York Bar No. 4086021
1770 St. James Place, Suite 115
Houston, Texas 77056
Telephone: (713) 688-6318
Telecopier: (713) 688-2817